731 A.2d 545 (1999)
322 N.J. Super. 535
STATE of New Jersey, Plaintiff-Respondent,
v.
Jermaine WALKER, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted March 1, 1999.
Decided June 30, 1999.
*547 Ivelisse Torres, Public Defender, for defendant-appellant (Cecelia Urban, Assistant Deputy Public Defender, of counsel and on the brief).
Patricia A. Hurt, Essex County Prosecutor, for plaintiff-respondent (Gary A. Thomas, Assistant Prosecutor, of counsel and on the brief).
Defendant-Appellant filed a pro se supplemental brief.
Before Judges HAVEY, SKILLMAN and PAUL G. LEVY. *546
*548 The opinion of the court was delivered by SKILLMAN, J.A.D.
The primary issue presented by this appeal is whether a trial court is required, in a case in which identification is a critical issue, to summarize the inconsistencies between a victim's in-court identification of the defendant and his or her description of the perpetrator shortly after the crime. We conclude that a trial court may properly discharge its responsibility to inform the jury of the dangers of unreliable eyewitness identification testimony by giving the form of special identification instruction approved in State v. Green, 86 N.J. 281, 293-94, 430 A.2d 914 (1981). It is not required to supplement that instruction by commenting upon inconsistencies or other weaknesses in the State's identification testimony.
Defendant and codefendant Andre Williams were indicted for second degree conspiracy, in violation of N.J.S.A. 2C:5-2 and N.J.S.A. 2C:15-1; four counts of first degree robbery, in violation of N.J.S.A. 2C:15-1; felony murder during the commission of a robbery, in violation of N.J.S.A. 2C:11-3a(3); purposeful or knowing murder, in violation of N.J.S.A. 2C:11-3; attempted murder, in violation of N.J.S.A. 2C:5-1 and N.J.S.A. 2C:11-3; aggravated assault, in violation of N.J.S.A. 2C:12-1b(1); possession of a handgun without a permit, in violation of N.J.S.A. 2C:39-5b; and possession of a handgun with the purpose to use it unlawfully against the person of another, in violation of N.J.S.A. 2C:39-4a. The indictment also charged defendant alone with additional weapons and drug offenses which were severed before trial.
At trial, the State presented evidence concerning four incidents involving a small red car that allegedly occurred in the same general area of Newark within an hour and a half time span in the early morning hours of May 8, 1994. The State's theory was that defendant, codefendant Williams and several other unidentified persons committed a series of robberies during this period, one of which resulted in Darlene Pollenitz' death.
The first robbery, which the State theorized occurred between 12 and 12:30 a.m., was committed upon Paula Alford, who was walking along a Newark street when a car occupied by four men stopped next to her. Two men carrying guns jumped out and asked, "You got any money?" Alford said no and ran across the street. As she ran, Alford heard a man in the car say, "Shoot the bitch!" One of the perpetrators then shot Alford in the buttocks. More than a year later, Alford identified defendant from a photographic array as one of the perpetrators. However, Alford was unable to identify defendant at trial, and she repeatedly expressed substantial uncertainty concerning her prior identification of his photograph. This identification and the State's other evidence concerning the Alford robbery is discussed in greater detail in section I of this opinion.
The second robbery occurred around 12:35 a.m., as Willie McClendon was walking home after eating at a local restaurant. When a small red car stopped near him, two men stepped out and demanded his wallet. After McClendon complied with this command, the men took his wallet and drove away. Approximately a month and a half after the crime, McClendon identified both defendant and codefendant Williams from a photographic array. McClendon also positively identified both defendants at trial.
Less than a half hour later, Yamina Brown's car was struck by a small red car. After the accident, the car turned, hit Brown's car a second time and then drove away. This accident occurred at a location only five or six blocks from the site of the Pollenitz murder.
The third robbery, which resulted in the Pollenitz murder, occurred between 1:00 and 1:30 a.m. As Pollenitz, Alberdeen Allen and two other women approached Pollenitz' *549 car, a red four-door sedan with a dent on the passenger side pulled in front of them and stopped. Two men, armed with handguns, got out of the car. The man Allen later identified as defendant pointed his pistol at her and one of the other women, and said, "Empty your pockets." The women complied with this directive, and Allen threw her purse on the ground. At this point, the other robber's gun went off, firing a fatal shot into Pollenitz' face. After picking up Allen's purse and the contents of the victims' pockets, the men got back into their car and drove away.
The police's initial investigation of the murder did not produce any useful information concerning the perpetrators. However, after Brown saw an article in a newspaper which described the small red car involved in the crime, she called the investigating officer and told him that a similar car had collided with her car the night of the murder. She also told the officer that the license plate number of the car was either 195-4851 or 195-4841. These license plate numbers together with Brown's description of the car eventually led the police to identify defendant and Williams as suspects.
In addition, several weeks after the murder, Allen received the items taken from her in the robbery wrapped in newspaper. McClendon's wallet was included with Allen's property. When Allen gave McClendon's wallet to the police, this alerted them to the possible connection between the Pollenitz felony-murder and the McClendon robbery. Thereafter, McClendon identified defendant and Williams from a photographic array as the persons who had robbed him. Allen identified defendant from the same photographic array as one of the persons involved in the Pollenitz felony-murder, but she was unable to identify Williams.
Defendant testified in his own defense and also presented various alibi witnesses.
At the close of the State's case, the trial court dismissed a count of the indictment which charged defendant with the robbery of Pollenitz. However, the jury subsequently found defendant guilty of Pollenitz' felony murder. The jury acquitted defendant of purposeful or knowing murder, but found him guilty of the lesser-included offense of reckless manslaughter. In addition, the jury acquitted defendant of the attempted murder of Alford and found him guilty of second degree robbery of Alford rather than the first degree offense. Defendant was found guilty of all the remaining charges, including the McClendon robbery. However, the jury was unable to reach a verdict with respect to any of the charges against codefendant Williams.
The court sentenced defendant to two fifteen year terms of imprisonment, with five years of parole ineligibility, for the McClendon and Alford robberies,[1] which were made concurrent with each other. It sentenced defendant to a thirty year term of imprisonment without parole for felony murder, which was made consecutive to the sentence for the Alford robbery. The court also sentenced defendant to a concurrent seven year term, with three years of parole ineligibility, for aggravated assault. The court merged defendant's other convictions. Consequently, defendant was sentenced to an aggregate term of forty-five years imprisonment, with thirty-five years of parole ineligibility.
At sentencing, defendant pled guilty pursuant to a plea bargain to three of the severed weapons and drug charges, for which he received concurrent five year terms. Those convictions are not challenged in this appeal.
On appeal, defendant argues that the State failed to present sufficient evidence *550 to support his convictions for the Alford robbery and aggravated assault, that the jury instructions concerning identification testimony were inadequate, and that the court erred in requiring defendant's sentences for the Alford and McClendon robberies to be served consecutively to his sentence for felony murder. In addition, defendant filed a pro se supplemental brief which argues that his conviction for felony murder must be reversed because the original indictment identified the predicate offense as the alleged Pollenitz robbery, which was dismissed for insufficient evidence at the close of the State's case. Defendant's pro se brief also argues there was insufficient evidence to support his conviction for reckless manslaughter and that his conviction for conspiracy must be reversed because the jury was unable to reach a verdict as to the codefendant's guilt.
We agree with defendant's argument that the State failed to present sufficient evidence to support his convictions for the Alford robbery and aggravated assault. Therefore, we reverse those convictions. We reject defendant's remaining arguments. Accordingly, we affirm defendant's other convictions and sentences.

I
Initially, we consider defendant's argument that the trial court should have entered a judgment of acquittal with respect to the Alford robbery and aggravated assault.
The test applied in determining whether a defendant is entitled to a judgment of acquittal is "whether, viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt." State v. Reyes, 50 N.J. 454, 459, 236 A.2d 385 (1967).
The prosecutor indicated in his opening statement that to support the charge that defendant was one of the perpetrators, the State would rely upon Alford's out-of-court photographic identification of defendant as well as anticipated corroborative evidence that the crime was committed within the same hour and a half time span as the McClendon and Pollenitz-Allen robberies by the same perpetrators using the same car. The prosecutor told the jury that the State's evidence would show that "Paula Alford was shot during a robbery attempt in Newark, shortly after twelve a.m." and that the "small compact red car" involved in the hit and run accident with Brown "came to be a common link between these crimes." However, the State's evidence at trial did not fulfill the expectations expressed in the prosecutor's opening statement.
Alford testified that she could not make an in-court identification of defendant. The prosecutor then elicited testimony that she had identified a photograph of defendant before trial. But Alford indicated on cross-examination that this identification had not occurred until more than a year after the crime. She also testified that she told the police that defendant's photograph only "looked like him, but I'm not sure." She further testified that because she was unsure whether the person in that photograph was one of the perpetrators, she only "picked out" the photograph of codefendant Williams. The State did not present any testimony by the police officers who interviewed Alford to contradict her assertion that her photographic identification of defendant was tentative only.
The State also failed to establish that the Alford robbery and assault occurred within the same time frame as the other robberies. Even though Alford seemed to agree, in response to the prosecutor's leading question, that the crime occurred around midnight, she testified at one point on cross-examination that the crime occurred around 9:00 or 9:30 p.m. on May 7, *551 1994. At another point she testified that it was "not night time" when the crime occurred. The State failed to present any other evidence concerning the time of this robbery.
Furthermore, the State failed to establish that the car used in the Alford robbery was the same car used in the other two robberies. In fact, even though Alford responded affirmatively to a leading question by the prosecutor which identified the car used in the crime as a "little red car," she testified on cross-examination that she was unable even to describe the car's color.
Therefore, Alford's testimony that a photograph of defendant shown to her more than a year after the crime "looked like" one of the perpetrators provided an insufficient evidential foundation for a reasonable jury to find beyond a reasonable doubt that defendant was one of the perpetrators of the Alford robbery and aggravated assault.

II
We turn next to the primary issue presented by this appealthe adequacy of the jury instructions regarding the victims' identification testimony.
Jury instructions consist of various different parts. The most critical part of any jury instruction is an explanation of the law applicable to the case. In a criminal case, this includes an explanation of the elements of the offenses with which the defendant is charged, any applicable defenses and the State's burden of proving the defendant's guilt beyond a reasonable doubt. Another part of any jury instruction is guidelines to assist the jury in performing its fact-finding role. In every case this includes at least what are commonly referred to as "general credibility instructions." State v. Jordan, 147 N.J. 409, 429, 688 A.2d 97 (1997).
In some cases, the trial court is also required to give special instructions to guide the jury's consideration of evidence which poses particular credibility issues not adequately addressed by general credibility instructions. The kinds of evidence which require special credibility instructions include out-of-court oral statements, State v. Kociolek, 23 N.J. 400, 421-22, 129 A.2d 417 (1957); hypnotically refreshed testimony, State v. Fertig, 143 N.J. 115, 127, 668 A.2d 1076 (1996); prior inconsistent statements, State v. Gross, 121 N.J. 1, 10, 16-17, 577 A.2d 806 (1990); prior criminal convictions, State v. Sinclair, 57 N.J. 56, 63, 269 A.2d 161 (1970); accomplice testimony, State v. Spruill, 16 N.J. 73, 78, 106 A.2d 278 (1954); and, what is involved in this case, eyewitness identification testimony, Green, supra, 86 N.J. at 291-94, 430 A.2d 914; see also State v. Cromedy, 158 N.J. 112, 727 A.2d 457 (1999) (cross-racial identifications).
There are significant differences between a trial court's roles in instructing the jury concerning the applicable law and in providing guidance concerning the jury's fact-finding responsibilities. The court's role in explaining the applicable law to the jury is paramount; the jury is told that it must accept the law as explained by the court, and that any statements by the attorneys concerning the applicable law must be disregarded if they conflict with the court's instructions. Model Jury Charges (Criminal) Criminal Final Charge: General Information (Feb. 24, 1997). Moreover, the prosecutor and defense counsel are allowed to discuss the law in their summations only to the extent reasonably necessary to set a framework for discussion of the evidence. See State v. Hanly, 127 N.J.Super. 436, 448, 317 A.2d 746 (App.Div.), certif. denied, 65 N.J. 578, 325 A.2d 711 (1974). Consequently, the trial court must give a clear explanation of the applicable law to provide the jury with an adequate understanding of the relevant legal principles. See State v. Burgess, 154 N.J. 181, 185-86, 712 A.2d 631 (1998); State v. Martin, 119 N.J. 2, 15-17, 573 A.2d 1359 (1990); State v. Federico, 103 N.J. 169, 176, 510 A.2d 1147 (1986).
*552 On the other hand, the court's instructions regarding the jury's assessment of credibility are provided solely to assist the jury in performing its fact-finding responsibilities. Thus, general credibility instructions identify various factors, such as the manner in which a witness testified, his or her means of obtaining knowledge of the facts and his or her interest in the outcome of the trial, which the jury "may take into consideration" in determining credibility. Model Jury Charges (Criminal) Criminal Final Charge: Credibility of Witness (Feb. 24, 1997). Similarly, the special instruction involved in this appeal relating to eyewitness identification testimony reiterates that "[t]he ultimate issue of the trustworthiness of an in-court identification is for you to decide." Model Jury Charges (Criminal) Identification (Nov. 26, 1990).
Moreover, because general and special credibility instructions relate to the jury's performance of its fact-finding responsibilities, the prosecutor and defense counsel may comment at length in their summations regarding the criteria applicable to the jury's evaluation of the witnesses' credibility. Therefore, in determining whether a trial court's failure to give a special credibility instruction constitutes reversible error, a reviewing court must consider not only the entire trial record, including the cross-examination of any witness whose testimony calls for a special credibility instruction, but also the prosecutor's and defense counsel's summations. See State v. Harris, 156 N.J. 122, 178-82, 716 A.2d 458 (1998); see also State v. Morton, 155 N.J. 383, 423, 715 A.2d 228 (1998); State v. Cooper, 151 N.J. 326, 380, 700 A.2d 306 (1997); State v. Gartland, 149 N.J. 456, 473-74, 694 A.2d 564 (1997); State v. Maldonado, 137 N.J. 536, 575-76, 645 A.2d 1165 (1994).
Due to the significant differences between a trial court's roles in explaining the applicable law and in providing guidance to the jury concerning its fact-finding responsibilities, and because many of the legal concepts which a jury is required to apply are more complicated conceptually than evaluation of witness credibility, there is a greater need in explaining the applicable law than in guiding the jury's fact-finding to relate jury instructions to the facts of the case. For example, in State v. Concepcion, 111 N.J. 373, 545 A.2d 119 (1988), the Court concluded in a case arising out of an alleged accidental shooting that "the trial court may have misled the jury and influenced it to return a guilty verdict" by simply repeating the model jury charges relating to reckless manslaughter and referring to only one aspect of the defendant's conduct relevant to this charge. Id. at 381, 545 A.2d 119. The Court indicated that the trial court also should have referred to defendant's other conduct relevant to his state of mind and instructed the jury "to evaluate the state of mind defendant possessed throughout the entire sequence of relevant events." Id. at 380, 545 A.2d 119. The Court also observed that "[o]rdinarily, the better practice is to mold the instruction in a manner that explains the law to the jury in the context of the material facts of the case." Id. at 379, 545 A.2d 119. However, even a trial court's failure to relate its explanation of the applicable law to the specific facts of the case will not be found to be reversible error if a reviewing court concludes that the model jury instruction adequately explained the law, especially in the absence of any objection at trial. See, e.g., Morton, supra, 155 N.J. at 421-23, 715 A.2d 228; Cooper, supra, 151 N.J. at 379-81, 700 A.2d 306; Maldonado, supra, 137 N.J. at 576-78, 645 A.2d 1165.
The requirement that a trial court give the jury a special instruction regarding identification testimony derives from Green, supra. The Court in that case held that because identification was the key issue, it was reversible error for the trial court not to give an instruction which specifically addressed the jury's evaluation of identification testimony. 86 N.J. at 291-92, 430 A.2d 914. The Court concluded *553 that the jury should have been instructed that "it was the State's burden to prove beyond a reasonable doubt that it was defendant who had raped [the victim], that it was not defendant's burden to prove that he was elsewhere when the offense occurred, and that the State's case depended on the eyewitness identification by [the victim], setting forth the respective factual contentions relative to her descriptions." Id. at 293, 430 A.2d 914. In addition, the Court noted that the trial court "could have used as a guide the Model Jury Charge." Ibid.
In this case, the trial court complied with Green by providing the jury with a special instruction concerning the victims' identifications of defendant and codefendant which closely tracked the Model Jury Charge on witness identification. The court specifically instructed the jury, in conformity with Green, 86 N.J. at 293, 430 A.2d 914, that:
Where the identity of the person who committed the offense is in issue, the burden of proving that identity is upon the State. The State must prove beyond a reasonable doubt that this particular defendant is the person who committed the crime. The defendant has neither the burden nor the duty to show that any crime, if committed, was committed by someone else, or to prove the identity of that other person.
The court also informed the jury that in determining whether the State had proven beyond a reasonable doubt that a defendant was the person or one of the persons who had committed the crimes charged:
[Y]ou should consider the testimony of the witnesses in light of customary criteria concerning credibility that I have explained to you. It is particularly appropriate that you consider the capacity or ability of the witness to make observations, or perceptions as you gauge it to be; and that you consider the opportunity which the witness had at the time and under all the attendant circumstances for seeing that which he or she says he or she saw, or that which he or she says he or she perceived with regard to his or her identification of the person who committed the alleged offense.
Unless the in-court identification results from the observations or perceptions of the defendant by the witness during the commission of the crime, rather than being the product of an impression gained at an out-of-court identification procedure, it should be afforded no weight.
The only deficiency in the court's identification instruction was its failure to refer to the specific victim identifications to which the instruction applied. The court referred to those identifications only in general terms, without indicating which defendant or defendants each victim had identified:
In order to meet its burden with respect to identification of the culprit, the State has presented the testimony of the various witnesses with regard to various counts, that is Paula Alford, William McClendon, Alberdeen Allen. They all testified. You will recall the witnesses identified a defendant, or both defendants, depending upon what was said or done here in the courtroom as the person who committed the particular offense.
However, defendant did not object to this omission at trial, and we are satisfied that it did not constitute plain error. R. 2:10-2; see State v. Salaam, 225 N.J.Super. 66, 69-72, 541 A.2d 1075 (App.Div. 1988). Defense counsel probably concluded that the trial court's failure to refer to the specific identifications to which the victims testified at trial was inconsequential, because defense counsel and the prosecutor had discussed those identifications at length in their summations. Indeed, defense counsel could have concluded that defendant would benefit from the court's failure to remind the jury that two of the three victims who testified, including Allen, who was one of the victims in the incident *554 resulting in Pollenitz' murder, had positively identified him in court. In any event, it is highly unlikely that a jury which sat through a two-and-a-half week trial in which the primary evidence was victim identification testimony, and then heard summations which discussed those identifications at length, was unaware of the specific identifications covered by the identification instruction. Cf. Maldonado, supra, 137 N.J. at 575, 645 A.2d 1165.
We turn next to defendant's argument that the trial court was required not only to give the special identification instruction approved in Green but also to summarize the inconsistencies between the victims' in-court identifications of the defendants and their descriptions of the perpetrators shortly after the crimes. Defendant argues that such an instruction was required to "ensure[ ] that the jury maintained an inexorable focus on the description each victim gave the police immediately after the robberieswhen a witness' memory would be most vivid" and "would have automatically illustrated the discrepancies between the descriptions the victims gave of the men who had robbed them."
However, Green does not require a trial court to comment upon the evidence in the manner urged by defendant. There is a significant difference between a court "explain[ing] the law in the context of the facts of the case," Cooper, supra, 151 N.J. at 380, 700 A.2d 306, and a court commenting upon the credibility of evidence. In State v. Biegenwald, 106 N.J. 13, 44, 524 A.2d 130 (1987), the Court noted that there is "no authority ... standing for the principle... that a court is compelled to ... comment [upon the evidence]," and that "[o]rdinarily, ... trial courts comment on evidence only sparingly, if at all, the better to assure that the ultimate determination of facts is made by the jury." The identification instruction which defendant contends the trial court should have given the jury, consisting of a discussion of inconsistencies and other weaknesses in the State's identification evidence, would have constituted a critical commentary upon that evidence, rather than simply an explanation of the law in the context of the facts of this case. Furthermore, if the court had undertaken to point out the inconsistencies between the victims' descriptions of the perpetrators immediately after the crime and their in-court identifications, it also would have been required, in the interests of fairness, to mention the State's explanations for those inconsistencies.
Although it is extremely important for a jury to be made aware of any inconsistencies in the State's identification testimony in order to properly evaluate its reliability, our judicial system confers this responsibility upon defense counsel rather than the trial court. In this case, defendant's trial counsel properly discharged this responsibility by vigorously cross-examining the victims who identified defendant as one of the perpetrators as well as the police officers who interviewed them after the crimes, and carefully pointing out in summation the inconsistencies between the victims' initial descriptions of the perpetrator later identified as defendant and defendant's actual physical characteristics. The trial court was not obligated to supplement this defense presentation by the form of commentary upon the evidence urged by defendant.
Finally, we reject defendant's argument that State v. Edmonds, 293 N.J.Super. 113, 679 A.2d 725 (App.Div.1996), certif. denied, 148 N.J. 459, 690 A.2d 606 (1997), requires a trial court to comment upon inconsistencies between a victim's in-court identification of a defendant and his or her prior descriptions of the perpetrator. Under the circumstances of that case, the court concluded that the trial court's identification instruction was "misleading" because it referred to the inculpatory part of the victim's identification testimony without also referring to the exculpatory part. Id. at 118, 679 A.2d 725. However, the panel which decided that case did not say that a trial court is required to comment upon *555 any inconsistencies between a witness' in-court identification of the defendant and any prior description or identification of the alleged perpetrator. Moreover, none of this court's other decisions involving the special identification instruction approved in Green indicate that such an instruction must include judicial comment concerning any inconsistencies or other weaknesses in the State's identification testimony. See State v. Green, 312 N.J.Super. 456, 461-65, 712 A.2d 224 (App.Div.), certif. denied, 156 N.J. 425, 719 A.2d 1023 (1998); State v. McNeil, 303 N.J.Super. 266, 271-75, 696 A.2d 757 (App.Div.1997); State v. Middleton, 299 N.J.Super. 22, 32-33, 690 A.2d 623 (App.Div.1997); Salaam, supra, 225 N.J.Super. at 69-72, 541 A.2d 1075; State v. Frey, 194 N.J.Super. 326, 329-30, 476 A.2d 884 (App.Div.1984); cf. State v. White, 158 N.J. 230, 249, 729 A.2d 31 (1999).
In sum, we conclude that the trial court was not required to comment upon inconsistencies or other weaknesses in the State's identification testimony. The court was only required to inform the jury of the recognized problems of eyewitness identification testimony by giving the standard identification instruction approved in Green. We also conclude that the court's failure to refer to the specific identification testimony governed by this instruction did not constitute plain error.

III
Defendant argues in his supplemental pro se brief that his felony murder conviction must be reversed because the indictment listed the robbery of Pollenitz as the predicate offense and the trial court dismissed that charge at the close of the State's case.
The felony murder count of the indictment read: "Jermaine Walker ... on the 8th day of May, 1994 ... did murder Darlene Pollenitz in that while the said Jermaine Walker ... [was] engaged in the commission of Robbery or flight therefrom of Darlene Pollenitz and in the course of such crime, the death of Darlene Pollenitz was caused." (Emphasis added). After the court granted defendant's motion to dismiss the count charging him with the robbery of Pollenitz for lack of sufficient evidence, the State moved to amend the felony murder count to eliminate as surplusage the words, "of Darlene Pollenitz." The court granted the State's motion, reasoning that the indictment also charged defendant with the Allen robbery, that the Allen robbery could provide the predicate offense for a felony murder conviction, and that the felony murder count of the indictment provided defendant with sufficient notice because it informed him that robbery was the predicate offense.
Rule 3:7-4 provides in pertinent part:
The court may amend the indictment... to correct an error in ... the description of the crime intended to be charged ... provided that the amendment does not charge another or different offense from that alleged and the defendant will not be prejudiced thereby in his or her defense on the merits.
Under this rule, a description of the crime may be changed unless it is "an essential element." State v. J.S., 222 N.J.Super. 247, 258, 536 A.2d 769 (App.Div.), certif. denied, 111 N.J. 89, 543 A.2d 45, (1988); see also State v. Lopez, 276 N.J.Super. 296, 302-09, 647 A.2d 1351 (App.Div.), certif. denied, 139 N.J. 289, 654 A.2d 469 (1994).
In this case the essence of the felony murder charge against defendant was that Pollenitz' death was caused while defendant was in the course of committing a robbery. The specification that the person robbed was Pollenitz was not essential to the charge. The Allen robbery, charged in a separate count of the indictment, also could have served as the predicate offenses for the felony murder charge. Moreover, because the Allen robbery was charged in the indictment and the indictment was amended at the close of the State's case to strike the reference to the alleged robbery *556 of Pollenitz, defendant clearly had an adequate opportunity to defend the amended felony murder charge.
This conclusion is supported by the Court's recent decision in State v. Branch, 155 N.J. 317, 714 A.2d 918 (1998). The defendant in that case was indicted for the armed robbery of a person named Mosley, the felony murder of Mosley and the armed robbery of two other men present at the scene. The indictment specifically charged defendant with the felony murder of Mosley in the course of robbing him. Id. at 32l, 714 A.2d 918. In addition to the charged crimes, evidence was adduced at trial that defendant robbed his codefendant, Patricia Lee (also called Pettie). Id. at 320, 714 A.2d 918. During deliberations, the jury sent a question to the judge asking whether defendant could be found guilty of felony murder for the robbery of Pettie. Id. at 322, 714 A.2d 918. The court replied that defendant was "not being charged with the robbery of Pettie" Ibid. The jury convicted defendant of the felony murder of Mosley but acquitted him of the three robberies charged in the indictment which could have served as the predicate offense for felony murder. Consequently, the trial court set aside the felony murder conviction as inconsistent with the jury's acquittal of defendant on the robbery charges. Id. at 322-23, 714 A.2d 918.
On appeal, this court concluded that the reference to the Mosley robbery in the felony murder count of the indictment was surplusage and that because it was clear from a jury question during deliberations that the felony murder conviction was based on the uncharged robbery of Pettie, it should be reinstated. The Supreme Court reversed on the ground that defendant did not receive fair notice that the State intended to use the Pettie robbery as the predicate offense for the felony murder charge. Id. at 324-25, 714 A.2d 918. However, the Court clearly indicated its agreement with our conclusion that the reference to the Mosley robbery in the felony murder count of the indictment was surplusage and that the uncharged Pettie robbery could have provided the foundation for the defendant's felony murder conviction if he had received reasonable notice at trial of the State's reliance upon that offense. Id. at 323, 714 A.2d 918.
In the present case, the amendment to the indictment at the close of the State's case provided defendant with clear notice that the State was relying upon the Allen robbery as the predicate offense for the felony murder charge. Moreover, unlike in Branch, where the defendant was acquitted of all the predicate offenses charged in the indictment, defendant's conviction of the Allen robbery leaves no doubt that the jury found he had committed that predicate offense. Therefore, Branch directly supports our conclusion that the words "of Darlene Pollenitz" in the felony murder count of the indictment were "mere surplusage," and that the trial court properly amended this count by deleting those words.

IV
Defendant also argues in his supplemental pro se brief that the evidence was insufficient to support his conviction for the lesser included offense of reckless manslaughter, and that his conviction for conspiracy must be reversed because the jury was unable to reach a verdict with respect to the guilt of codefendant Williams. However, defendant's convictions for reckless manslaughter and conspiracy were merged into his convictions for other offenses which we have affirmed on this appeal. Therefore, it is unnecessary to consider defendant's arguments relating to the merged convictions. See State v. Pennington, 273 N.J.Super. 289, 295-96, 641 A.2d 1085 (App.Div.), certif. denied, 137 N.J. 313, 645 A.2d 141 (1994).

V
Defendant argues that the trial court erred in making his sentence of thirty *557 years imprisonment without parole for the Pollenitz murder consecutive to his sentence of fifteen years imprisonment, with five years of parole ineligibility, for the McClendon robbery.
Preliminarily, we note that the judgment of conviction states that defendant's sentence for the McClendon robbery shall be concurrent to his sentence for the Alford robbery. It also states that the sentence for the Pollenitz murder shall be consecutive to the sentence on defendant's conviction for the Alford robbery, which we have reversed. The judgment does not expressly state that the sentence for the Pollenitz murder shall be served consecutively to the sentence for the McClendon robbery. However, in imposing sentence, the trial court clearly expressed its intent that defendant's sentence for the Pollenitz murder was to be served consecutively to his sentences for the McClendon and Alford robberies:
[T]he consecutive sentences are imposed because I find that the crimes and their objectives were predominately independent of each other, that is the robbery of McClendon and [Alford] had nothing to do with the robbery and subsequent felony murder of Miss Pollenitz.
It is firmly established that the sentencing transcript is "the true source of the sentence." State v. Pohlabel, 40 N.J.Super. 416, 423, 123 A.2d 391 (App.Div.1956). Consequently, we are satisfied that, construed in light of the sentencing transcript, the judgment of conviction imposes consecutive sentences for the Pollenitz murder and McClendon robbery.
In deciding whether to impose concurrent or consecutive terms, a sentencing judge must consider whether:
(a) the crimes and their objectives were predominantly independent of each other; (b) the crimes involved separate acts of violence or threats of violence; (c) the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior; (d) any of the crimes involved multiple victims; [and] (e) the convictions for which the sentences are to be imposed are numerous.
[State v. Yarbough, 100 N.J. 627, 644, 498 A.2d 1239 (1985), cert. denied 475 U.S. 1014, 106 S.Ct. 1193, 89 L.Ed.2d 308 (1986).]
In imposing consecutive sentences upon defendant, the trial court found that the Pollenitz murder and McClendon robbery were "predominantly independent" of each other and that the crimes "involved separate acts of violence or threats of violence." This brief statement of reasons for the imposition of consecutive sentences was consistent with the Yarbough guidelines. Although the two crimes were committed "so closely in time and place as to indicate a single period of aberrant behavior" (Yarbough factor 3(c)), they involved "separate acts of violence" (Yarbough factor 3(b)) and "multiple victims" (Yarbough factor 3(d)). Under these circumstances, it was within the province of the trial court to conclude that the factors supporting consecutive sentences outweighed the factors supporting concurrent sentences. See State v. Roach, 146 N.J. 208, 230-31, 680 A.2d 634, cert. denied, 519 U.S. 1021, 117 S.Ct. 540, 136 L.Ed.2d 424 (1996); State v. Russo, 243 N.J.Super. 383, 413, 579 A.2d 834 (App.Div.1990), certif. denied, 126 N.J. 322, 598 A.2d 882 (1991).
Defendant's convictions for the Alford robbery and aggravated assault are reversed. The judgment of conviction is affirmed in all other respects.
NOTES
[1] Although not raised as an issue by defendant, the sentence for the Alford robbery was illegal because defendant was convicted of only a second degree robbery of Alford. In any event, we reverse this conviction because the State failed to present sufficient evidence to support a guilty verdict.