**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5225-15T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ANTIJUAN M. BYERS, a/k/a
TONE,

     Defendant-Appellant.

_____

Submitted September 18, 2018 – Decided December 19, 2018

Before Judges Rothstadt and Gilson.

On appeal from Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 13-06-1020.

Joseph E. Krakora, Public Defender, attorney for appellant (John W. Douard, Assistant Deputy Public Defender, of counsel and on the brief).

Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney for respondent (Lisa Sarnoff Gochman, Legal Assistant, of counsel and on the brief).

PER CURIAM

After the trial court denied defendant Antijuan Byers' motions to suppress his confession to police and to bar any reference to the police searching his home pursuant to a warrant, defendant was tried before a jury that convicted him of committing third-degree possession of a controlled dangerous substance (CDS), N.J.S.A. 2C:35-10(a)(1); second-degree possession of CDS with intent to distribute, N.J.S.A. 2C:35-5(b)(2); and third-degree possession of CDS with intent to distribute within 1,000 feet of school property, N.J.S.A. 2C:35-7. Defendant made a motion for a new trial based upon what he claimed was new evidence that established his confession was not voluntary and the prejudice caused by the trial court's earlier ruling allowing a police witness to refer to the search warrant. The trial court denied his motion and sentenced defendant to six years in prison.

Defendant appeals from his judgment of conviction and contends that his statement to the police after his arrest should have been suppressed because the officers promised that he would be released on his own recognizance (ROR) in exchange for the confession. He also argues that he invoked his constitutional right to counsel, which should have ended the interrogation. In addition, defendant contends that he was denied due process and a fair trial when the jury learned that the police obtained a warrant to search his apartment and had earlier observed him conducting drug transactions for which he was not charged with

2

any offense. Finally, defendant argues that the trial court erred in not instructing the jury on a statutory affirmative defense to the school zone offense.

We have considered defendant's contentions in light of our review of the record and applicable legal principles. We affirm.

## I.

We derive the salient facts from the record. They are summarized as follows. As part of an ongoing narcotics investigation, law enforcement officers obtained a search warrant for defendant's apartment that they executed on January 23, 2013. When they arrived, officers found defendant lying in bed, secured him, and informed him that they would be conducting a search pursuant to a warrant. Defendant stated to the police that they would find crack cocaine in a blue and white plastic bottle in the bathroom. The search led to the discovery of the plastic bottle and its contents were later confirmed to be crack cocaine. In addition, they located a clear bag containing a substance, which was also confirmed to be crack cocaine. The total weight of the CDS exceeded one-half ounce. The police also found other items related to the distribution of CDS, including lottery tickets, which are commonly used to package narcotics, and scales.

Defendant was arrested and taken to the police station for processing and questioning. Detective Keith Finkelstein of the Neptune Police Department

3

advised defendant of the narcotics investigation, administered <u>Miranda</u> warnings,[1] and secured defendant's written waiver of his rights. During the ensuing videotaped interrogation, defendant made incriminating statements, admitting to possessing and selling crack cocaine.

Early in the interrogation, Finkelstein confirmed with defendant the circumstances of what transpired earlier at defendant's home. During the following portion of their conversation, Finkelstein referred to the search warrant three times:

> [FINKELSTEIN]: Okay. We conducted a narcotics investigation. As a result of that we got a search warrant for [an apartment on Myrtle Avenue]. That's your apartment, correct?
>
> [DEFENDANT]: Hmm.
>
> [FINKELSTEIN]: We executed the search warrant this morning and you were asleep in bed; is that correct?
>
> [DEFENDANT]: Yeah.
>
> [FINKELSTEIN]: We advised you that we had a search warrant, and you said you wished to cooperate, correct?
>
> [DEFENDANT]: Yes.

---

[1] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

During the course of Finkelstein's continuing interrogation of defendant, the following exchange occurred relating to Finkelstein's inability to understand something defendant was stating to him:

> [FINKELSTEIN]: How much, if you had to guess, money, do you think you make in a week?
>
> [DEFENDANT]: Shit, I wasn't making (inaudible).
>
> [FINKELSTEIN]: What's that?
>
> [DEFENDANT]: Shit.
>
> [FINKELSTEIN]: What did you say?
>
> [DEFENDANT]: Probably like $60, $70.
>
> [FINKELSTEIN]: A week?
>
> [DEFENDANT]: Yeah, I don't make -- I'm making shit.

At the end of his questioning, Finkelstein told defendant "Okay. I appreciate it. We'll get you back and see what we can do. We'll just -- we're gonna get you back into booking and do what we gotta do." Defendant's reply was recorded as him stating "With the (inaudible.)." Defendant was later released, ROR, to await trial, even though he was charged with a second-degree offense.

Prior to the commencement of trial, defendant filed a motion to suppress his statements to the police. Defendant argued that the court should not admit

5

into evidence anything he said regarding the location of contraband in his apartment after being placed in handcuffs and under arrest and not being advised of his Miranda rights. He also argued his statements should be suppressed because where the intake interview transcript is marked "inaudible," he was either requesting a lawyer or stating that he would like to stop the conversation. In addition, he claimed that any inculpatory statement he made after he received Miranda warnings was the product of a promise made to him by Finkelstein that although defendant was being held on a second-degree charge for which ROR is not usually available, he would be released if he confessed. Defendant cited to Finkelstein's statement at the end of the interrogation about "see[ing] what [they] can do" as referring to Finkelstein's promise.

The trial court conducted a Miranda hearing on March 8, 2016, at which Finkelstein testified and the videotape of the interrogation was played for the court. His testimony included a concession that during the inaudible portion of the interrogation, after he questioned defendant about his earnings, defendant may have said "lawyer" during the interview, but Finkelstein did not realize that during the interrogation. However, when he attempted to clarify during the interrogation what defendant said, defendant did not ask for a lawyer or to stop the questioning, but continued to be responsive to Finkelstein's questions about his criminal conduct. Finkelstein also testified that no promises were made to

6

defendant in exchange for his statement and that he could not recall what "we'll get back to you and see what we can do" referred to.

At the conclusion of the hearing, the trial court found that the State proved beyond a reasonable doubt that defendant was advised of his Miranda rights and provided a knowing, intelligent, and voluntary waiver of those rights. As to the claim that defendant asked for a lawyer or otherwise said anything that required the police to terminate the interrogation, the trial court concluded that although defendant may have said either "lawyer" or "stop" during the inaudible portion, there was no clear statement made by defendant and when the officer asked him to repeat what he said, defendant never asked to stop the questioning or for a lawyer. Addressing the alleged promise of ROR bail for a confession, the court found that there was no evidence that a promise was made or proof that contradicted Finkelstein's testimony in which he "clearly stated that at no time did he make any promise or threats of any sort to defendant in order to induce a statement."

On March 15, 2016, the trial court addressed defendant's motion in limine to bar any mention of a search warrant during trial. After considering counsels' arguments, the trial court reviewed defendant's contention in light of applicable case law and observed that similar contentions were raised in the past but the "[a]ppellate courts have rejected it." The court denied the motion, but agreed to

7

deliver a limiting instruction to the jury indicating that the fact that defendant's home was lawfully searched had no bearing on whether he was guilty of the crimes charged.[2]

Finkelstein testified at trial about defendant's arrest and interrogation. During his testimony, the videotape of his questioning of defendant was played for the jury. Afterward, Finkelstein testified that his statement at the end of the interrogation "might have been" in reference to bail, but that he could not recall.

After testifying, but before the jury deliberated, Finkelstein advised the prosecutor that he recalled that defendant had offered to work as a confidential

---

[2] The trial court instructed the jury as follows:

> THE COURT: You've heard evidence that the police entered the house—defendant's house with a search warrant. Ordinarily police may not enter a home without lawful authority. You have heard this evidence for the limited purpose to establish that the police entered defendant's home lawfully. The mere fact that the defendant's home was lawfully searched has no bearing whatsoever on whether he is guilty of the crimes for which he is on trial. You should not consider in any way or manner the fact that the police were lawfully in his home at that particular point in time, nor should you hold it against the defendant. Each defendant is presumed on trial to be innocent regardless of whether the police obtained a search warrant. You may consider this evidence for a limited purpose to establish only that the police were acting lawfully when they entered the defendant's home.

informant (CI) and that his offer played a role in the determination of whether to seek a ROR release for him. Neither Finkelstein nor defendant had disclosed that information to either the prosecutor or defense counsel. The next day, the prosecutor advised defense counsel and the court of Finkelstein's disclosure. After being given an opportunity to consult with defendant, defense counsel entered into an agreement with the prosecutor in which both parties agreed there would be no testimony from either side about defendant's offer to serve as a CI. There was no further evidence adduced on the subject or any objections raised regarding defendant's offer or its relation to his inculpatory statements to Finkelstein.

Defendant testified at trial and denied being in possession of, selling, or intending to sell crack cocaine.[3] Addressing his videotaped confession, he explained that he felt "pushed into a corner" to admit he owned the drugs because the officers threatened to seek a $100,000 bail and due to his health issues, defendant could not withstand being incarcerated while awaiting trial. Defendant reiterated that he was promised ROR in exchange for his cooperation. During cross examination, the prosecutor never questioned defendant about

---

[3] The theory of defendant's case was that he never possessed any CDS and that what the police found at his apartment belonged to a cousin who was staying with him.

9

whether his willingness to cooperate had anything to do with his offering to be a CI.

On March 17, 2016, the jury found defendant guilty on all three counts. Defendant moved for a new trial based on new evidence, which his counsel characterized as Finkelstein's lying in his testimony about there being no promises made to defendant in order to obtain his confession. According to counsel, the evidence was that "ROR was given to [defendant] in exchange for his ability to essentially cooperate with the police." In addition, defendant renewed his objection to the officer's reference to the search warrant and also relied upon an issue relating to another officer's expert testimony.

The court considered defendant's motion prior to sentencing on July 29, 2016, and denied the application. Addressing Finkelstein's testimony, the court found that because counsel and both parties were aware of the evidence before the jury began deliberations, it could not be considered new evidence. Moreover, the court observed that it was not surprising that both defendant and the police wanted to keep defendant's offer from public disclosure to keep his help, if any, confidential. It also noted that defendant could have advised his counsel about the offer and raised it at the suppression hearing without jeopardizing his right to remain silent at trial. Turning to the renewal of the search warrant issue, the judge concluded that under the Supreme Court's then-

A-5225-15T1

recently issued opinion in <u>State v. Cain</u>, 224 N.J. 410, 433 (2016),[4] there was no error in allowing the jury to hear the videotape's brief references to the warrant.

After denying defendant's motion, the court sentenced defendant. This appeal followed.

On appeal, defendant raises the following issues for our consideration:

> POINT I
>
> MR. BYERS' INCULPATORY STATEMENT TO POLICE WAS INVOLUNTARY BECAUSE HE HAD BEEN OFFERED ROR IN EXCHANGE FOR A CONFESSION, AND THE INTERROGATORS FAILED TO CLARIFY HIS APPARENT REQUEST EITHER FOR COUNSEL OR TO STOP THE QUESTIONING.
>
>> A.    Despite Agreeing That Mr. Byers Seemed To Expect Something In Return For Providing An Inculpatory Statement, And That Release ROR Was Not Available For A Second-Degree Offense, The Judge Found That The Statement Was Voluntary.
>>
>> B.    The Motion For A New Trial With A New <u>Miranda</u> Hearing Should Have Been Granted.
>>
>> C.    Despite Agreeing That Mr. Byers Either Said "Stop" Or "Lawyer," The Judge Found That The <u>Miranda</u> Procedure Was Scrupulously Followed.

---

[4]  The Court issued its opinion on March 15, 2016, during defendant's trial.

11

POINT II

MR. BYERS WAS DENIED DUE PROCESS AND A FAIR TRIAL WHEN THE JURY HEARD FROM THE INTERROGATION VIDEO THAT POLICE HAD OBTAINED A SEARCH WARRANT FOR HIS APARTMENT AND THEY BELIEVED HE WAS A DRUG DEALER, IN VIOLATION OF THE RULE OF LAW ENUNCIATED IN STATE V. CAIN.

POINT III

THE JUDGE'S REFUSAL TO INCLUDE IN THE SCHOOL-ZONE OFFENSE JURY CHARGE THE STATUTORY AFFIRMATIVE DEFENSE THAT THE ALLEGED CRIME TOOK PLACE WHOLLY WITHIN A PRIVATE RESIDENCE, NO PERSON 17 YEARS OLD OR YOUNGER WAS PRESENT IN THE RESIDENCE, AND THE OFFENSE WAS NOT COMMITTED FOR PROFIT, DEPRIVED MR. BYERS OF AN ALTERNATIVE DEFENSE, AND VIOLATED HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL.

II.

We first address defendant's contention that the trial judge erred in denying his motion to suppress. Defendant raises two issues regarding his confession. First, he argues that his inculpatory statements to the police were involuntary because he had been offered ROR in exchange for his confession. Second, defendant contends that he invoked his constitutional right to a lawyer during the interrogation and that the police failed to clarify his request or issue

a new set of <u>Miranda</u> warnings before proceeding with questioning.   We find no merit to these contentions.

When reviewing a trial court's denial of a motion to suppress a defendant's statement, we must "engage in a 'searching and critical' review of the record." <u>State v. Maltese</u>, 222 N.J. 525, 543 (2015) (quoting <u>State v. Hreha</u>, 217 N.J. 368, 381-82 (2014)), <u>cert. denied</u>, ___ U.S. ___, 136 S. Ct. 1187 (2016).  We defer to the trial court's findings supported by sufficient credible evidence in the record, particularly when they are grounded in the judge's feel of the case and ability to assess the witnesses' demeanor and credibility.  <u>State v. Robinson</u>, 200 N.J. 1, 15 (2009); <u>State v. Elders</u>, 192 N.J. 224, 243-44 (2007).

This standard of review applies even where the motion court's "factfindings [are] based solely on video or documentary evidence," such as recordings of custodial interrogations by the police.  <u>State v. S.S.</u>, 229 N.J. 360, 379 (2017).  We will not reverse a motion court's findings of fact based on its review of a recording of a custodial interrogation unless the findings are clearly erroneous or mistaken.  <u>Id.</u> at 381.  However, we review issues of law de novo. <u>Id.</u> at 380; <u>State v. Shaw</u>, 213 N.J. 398, 411 (2012).

It is beyond cavil that a confession must be voluntary and not induced by a promise or threat.  <u>Miranda</u>, 384 U.S at 462.  A confession "must not be extracted by any sort of threats or violence, nor obtained by any direct or implied

13

promises, however slight, nor by the exertion of any improper influence." State v. Corbitt, 74 N.J. 379, 411 (1977) (citations omitted). See State v. Roach, 146 N.J. 208, 226-27 (1996) (defendant's confession was not involuntary after police deceived him into believing that they sought his statement as a witness rather than a defendant); State v. Miller, 76 N.J. 392, 403-04 (1978) (defendant's confession was not involuntary even though police appealed to him by stating that whoever murdered the victim was not a criminal who should be punished, but a person in need of medical treatment). But see State v. Fletcher, 380 N.J. Super. 80, 82 (App. Div. 2005) (confession obtained after police officers promised defendant that he could speak "off-the-record" deemed involuntary); State v. Pillar, 359 N.J. Super. 249, 272-73 (App. Div. 2003) (same).

At a hearing challenging the admission of statements made during a custodial interrogation, "the State must prove beyond a reasonable doubt that a defendant's confession was voluntary and was not made because the defendant's will was overborne." State v. Knight, 183 N.J. 449, 462 (2005). The State must also prove "the defendant was advised of his rights and knowingly, voluntarily and intelligently waived them." State v. W.B., 205 N.J. 588, 602 n.3 (2011). Further, the determination of whether the State has satisfied its burden of proving beyond a reasonable doubt that a defendant's statement was voluntary requires "a court to assess 'the totality of the circumstances, including both the

14

characteristics of the defendant and the nature of the interrogation.'" Hreha, 217 N.J. at 383 (quoting State v. Galloway, 133 N.J. 631, 654 (1993)).

We must determine "whether, under the totality of circumstances, the confession is 'the product of an essentially free and unconstrained choice by its maker' or whether 'his will has been overborne and his capacity for self-determination critically impaired.'" Pillar, 359 N.J. Super. at 271 (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 225-26 (1973)). The "factors relevant to that analysis include 'the suspect's age, education and intelligence, advice concerning constitutional rights, length of detention, whether the questioning was repeated and prolonged in nature, and whether physical punishment and mental exhaustion were involved.'" Hreha, 217 N.J. at 383 (quoting Galloway, 133 N.J. at 654). The court should also consider defendant's prior encounters with law enforcement and the period of time that elapsed between the administration of Miranda warnings and the defendant's confession. Ibid.

Where a court is required to determine whether a defendant's statement was not voluntary because it was allegedly given in exchange for a promise of some benefit, it must consider the nature of the promise, the context in which the promise was made, the characteristics of the individual defendant, whether the defendant was informed of his rights, and whether counsel was present.

15

Pillar, 359 N.J. Super. at 271 (citations omitted). "Whether a statement by the interrogating officer amounts to a promise must be viewed from the defendant's, not the [interrogator]'s perspective, applying a reasonableness standard." Id. at 272 (quoting State v. Watford, 261 N.J. Super. 151, 163 (App. Div. 1992) (Havey, J., concurring)).

Applying these principles and deferring to the trial court's factual findings, which are amply supported by the record, we conclude that its denial of defendant's motion to suppress his statement was proper. Based on the court's assessment of the totality of the circumstances, including that there was no evidence that any promise was made, as well as the characteristics of defendant and the nature of the interrogation, the court correctly determined that the State satisfied its burden of proving beyond a reasonable doubt that defendant was advised of his rights, knowingly, voluntarily and intelligently waived his rights, and gave a voluntary statement. As the court noted, under the totality of the circumstances, both the officers and defendant were polite, calm, and collected; there was nothing unusual about the officers' demeanor or the room in which defendant was questioned; there was nothing suggesting that defendant was threatened or coerced; and given defendant's criminal history, he understood the criminal justice system and how to negotiate with officers. We reject defendant's contention that Finkelstein's vague reference to seeing what he could

16

do at the end of the interrogation and the fact that defendant was released ROR established any doubt that his confession was voluntary.

We similarly conclude there was no evidence before the trial court that established defendant requested to stop his interrogation or asked for a lawyer that would have required Finkelstein to "scrupulously honor" by terminating the interrogation.  State v. Hartley, 103 N.J. 252, 261 (1986).  Custodial interrogation must cease if the suspect "indicates in any manner, at any time during questioning that he wishes to remain silent."  State v. Johnson, 120 N.J. 263, 281 (1990) (citing Miranda, 384 U.S. at 473-74).  If the right to silence is invoked, police may resume interrogation only after the passage of a significant period of time and after the suspect is given a fresh set of Miranda warnings. Hartley, 103 N.J. at 267.

Here, to the extent that Finkelstein conceded and the trial court speculated there was some ambiguous suggestion during the inaudible portion that defendant wanted to stop the interrogation, Finkelstein properly interrupted questioning defendant about his illicit activities and asked for clarification about what defendant stated.  See State v. Alston, 204 N.J. 614, 624 (2011) (stating if defendant's words "amount to even an ambiguous request for counsel, the questioning must cease, although clarification is permitted; if the statements are so ambiguous that they cannot be understood to be an assertion of the right,

17

clarification is not only permitted but needed."). See also State v. Chew, 150 N.J. 30, 63 (1997). Finkelstein attempted to clarify defendant's statement twice, but defendant never expressed any desire to stop the interrogation nor did he otherwise invoke his right either to counsel or to remain silent. Significantly, and in any event, the inaudible statements occurred after defendant had already confessed. We have no cause to disturb the trial court's denial of defendant's suppression motion.

## III.

Next, we address defendant's argument that the trial court improperly denied his motion for a new trial. Defendant contends that his motion should have been granted based upon the new evidence of his agreement with Finkelstein to act as a CI. We disagree.

"[A] motion for a new trial is addressed to the sound discretion of the trial judge, and the exercise of that discretion will not be interfered with on appeal unless a clear abuse has been shown." State v. Armour, 446 N.J. Super. 295, 306 (App. Div. 2016) (quoting State v. Russo, 333 N.J. Super. 119, 137 (App. Div. 2000)). We will not disturb a trial court's ruling on a motion for a new trial "unless it clearly appears that there was a miscarriage of justice under the law." Id. at 305 (quoting R. 2:10-1).

18

Under Rule 3:20-1, a trial court may grant a defendant a new trial if required in the interests of justice. The Rule "provide[s] a mechanism for seeking a new trial following a criminal conviction[,] including 'on the ground of newly-discovered evidence' at any time." Ibid. (quoting R. 3:20-2). Newly-discovered evidence sufficient to warrant a new trial is evidence that is "(1) material to the issue and not merely cumulative or impeaching or contradictory; (2) discovered since the trial and not discoverable by reasonable diligence beforehand; and (3) of the sort that would probably change the jury's verdict if a new trial were granted." State v. Nash, 212 N.J. 518, 549 (2013) (quoting State v. Carter, 85 N.J. 300, 314 (1981)).

Applying these guidelines here, we conclude the trial court correctly determined that the evidence of defendant's offer to serve as a CI was not new evidence warranting a new trial. At the outset, as found by the trial court, the evidence was not newly discovered as it was based upon information within defendant's knowledge since he was arrested. More important, the evidence did not establish that defendant confessed in exchange for becoming a CI. If anything, the evidence established that he obtained his ROR so he could be a CI, not because he confessed. In any event, rather than move for a mistrial upon his alleged discovery of the evidence, defendant agreed with the State that the information about him becoming a CI would not be presented to the jury.

19

Therefore, there was no reason to conclude that had the information been revealed earlier, the outcome of the trial would have been different. Under these circumstances, defendant's motion for a new trial was made without any basis. See State v. Smith, 224 N.J. 36, 49-50 (2016) (rejecting a defendant's motion for a new trial based upon the prosecutor's late release of discoverable information during a trial and, instead, considering whether defendant's two motions for a mistrial should have been granted).

IV.

We next address defendant's argument that his due process rights were violated when the jury learned that the police were in possession of a search warrant and believed that defendant was a drug dealer prior to executing the warrant. As to the search warrant, defendant raised this issue in limine and again as part of his motion for a new trial. We find his challenge to the trial court's allowing the jury to hear Finkelstein's fleeting three references to the search warrant during his interrogation of defendant to be without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2). Suffice it to say, the Supreme Court made clear in Cain that a "prosecutor has the right to convey to the jury that the police were authorized to search a home [and the jury] should not be left guessing whether the police acted arbitrarily by entering a home without a search warrant." Cain, 224 N.J. at 433. Moreover, here, the jury was

20

not exposed to "repeated references" to the search warrant nor to an indication from which it could "draw the forbidden inference that the issuance of a warrant by a judge supports the rendering of a guilty verdict." Ibid. The "passing reference" to the existence of a search warrant in the context of replaying the videotape of defendant's confession was harmless. State v. McDonough, 337 N.J. Super. 27, 34 (App. Div. 2001). To the extent the reference caused any prejudice to defendant, it was adequately addressed by the trial court's comprehensive limiting instruction to the jury.

Turning to defendant's argument that his due process rights were violated by the videotape's references to his uncharged drug sales, we note at the outset that he did not raise any objection before the trial court to those references. We therefore consider his objection under the plain error standard. Under this standard, "any error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result." R. 2:10-2. The possibility of an unjust result must be "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." State v. Macon, 57 N.J. 325, 336 (1971).

Here, we discern no error by the trial court in admitting intrinsic evidence of the charged offenses through the videotape interrogation's references to defendant's other, uncharged sales of CDS. Evidence is intrinsic to a charged

21

offense if (1) it "directly proves" the offense or (2) the uncharged acts are "performed contemporaneously" with the offense and "facilitate the commission" of the charged crime. State v. Rose, 206 N.J. 141, 180 (2011) (citing United States v. Green, 617 F.3d 233, 248-49 (3d Cir. 2010)). Here, the videotape's references to defendant's drug dealing falls within the first category of intrinsic evidence because it directly proved that defendant possessed cocaine; possessed cocaine with intent to distribute; and possessed cocaine in a school zone with intent to distribute. See State v. Brockington, 439 N.J. Super. 311, 324-25 (App. Div. 2015). Accordingly, it is subject to analysis under N.J.R.E. 403 only, not N.J.R.E. 404(b). Id. at 333. Under N.J.R.E. 403, "relevant evidence may be excluded if its probative value is substantially outweighed by the risk of (a) undue prejudice, confusion of issues, or misleading the jury or (b) undue delay, waste of time, or needless presentation of cumulative evidence." Here, the evidence of defendant's drug sales "had no 'inherently inflammatory potential,'" Brockington, 439 N.J. Super. at 333 (citations omitted), and its probative value was not outweighed by a danger of unfair prejudice. Additionally, other evidence of defendant's guilt, such as the cocaine and other items found in his apartment, was so overwhelming as to render any error caused by Finkelstein's remarks harmless.

22

V.

Finally, we address defendant's argument that his right to a fair trial was violated when the trial judge refused to instruct the jury on an affirmative defense to the school zone offense. N.J.S.A. 2C:35-7 prohibits the distribution, or possession with intent to distribute, a controlled dangerous substance within 1,000 feet of school property. Under N.J.S.A. 2C:35-7(e), it is an affirmative defense that the prohibited conduct (1) took place entirely within a private residence, (2) that no person seventeen years of age or younger was present in such private residence during the commission of the offense, and (3) that the prohibited conduct did not involve distributing or possessing with intent to distribute any controlled dangerous substance for profit. The burden is on the defendant to establish these elements by a preponderance of the evidence. State v. Ivory, 124 N.J. 582, 594 (1991). Under that standard, a defendant "must establish that a desired inference is more probable than not. If the evidence is in equipoise, the burden has not been met." Globe Motor Co. v. Igdalev, 225 N.J. 469, 482 (2016) (citations omitted).

If a defendant meets his burden, a court must include the requested charge. "Appropriate and proper charges to a jury are essential for a fair trial." State v. Green, 86 N.J. 281, 287 (1981); see also State v. Martini, 187 N.J. 469, 477 (2006). In criminal cases, proper jury instructions are critical. State v. Jordan,

23

147 N.J. 409, 422 (1997). See State v. Walker, 322 N.J. Super. 535, 546-53 (App. Div. 1999) (reviewing the types of general and special instructions that should be given in a criminal case). Where a statutory defense exists and the defendant requests a charge on the defense, the court must give the instruction if there is a rational basis for doing so. State v. Walker, 203 N.J. 73, 87 (2010). Failure to deliver the charge generally warrants a reversal. Claims of improper jury charges are "poor candidates for rehabilitation under the harmless error philosophy." State v. Simon, 79 N.J. 191, 206 (1979).

We conclude, as did the trial court, that there was no rational basis for the court to charge the statutory defense in this case. Specifically, defendant did not prove element (3) by a preponderance of the evidence. That element requires proof that while defendant possessed the CDS, he was not distributing it and had no intention to distribute it to others. Here, in contradiction of his statement to police, defendant took the position that he did not possess any of the CDS found in his home and that it belonged to his cousin. Under these circumstances, there was no reason for the trial court to charge the statutory affirmative defense.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

24

A-5225-15T1