768 A.2d 221 (2001)
338 N.J. Super. 80
STATE of New Jersey, Plaintiff-Respondent,
v.
Antrell MURRAY, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted February 15, 2001.
Decided March 15, 2001.
*222 Peter A. Garcia, Acting Public Defender, attorney for appellant (William Welaj, Designated Counsel, on the brief).
Ronald S. Fava, Passaic County Prosecutor, attorney for respondent (Marc A. Festa, Assistant Prosecutor, of counsel and on the brief).
Before Judges KEEFE, STEINBERG and WEISSBARD.
The opinion of the court was delivered by STEINBERG, J.A.D.
A Passaic County Grand Jury returned Indictment No. 99-4-376 charging defendant Antrell Murray, along with his codefendant *223 Laverna B. White, with third-degree unlawful possession of a controlled dangerous substance, cocaine, N.J.S.A. 2C:35-10(a)(1) (Count One); third-degree distribution of a controlled dangerous substance, cocaine, N.J.S.A. 2C:35-5(b)(3) (Count Two); third-degree distribution of a controlled dangerous substance, cocaine, within 1,000 feet of school property, N.J.S.A. 2C:35-7 (Count Three); and second-degree distribution of a controlled dangerous substance, cocaine, within 500 feet of a public housing facility, park, or building, N.J.S.A. 2C:35-7.1 (Count Four). Defendant was charged both as a principal and accomplice, pursuant to N.J.S.A. 2C:2-6.
A jury found defendant guilty on all four counts. Prior to imposing sentence, the judge merged counts one and two into counts three and four. He then sentenced defendant to seven years of imprisonment on count four, and a concurrent four-year term on count three, with three years of parole ineligibility. Finally, the judge imposed the appropriate monetary penalties, fees, assessments and driver's license revocation. Although we affirm defendant's convictions, we remand for resentencing.
According to the State's proofs, on September 29, 1998, Passaic Detectives William Paranto and Juan Clavijo were working with two Federal Drug Enforcement Administration (DEA) agents, Special Agent Barbara Devine, and Special Agent Robert Fenton. The Passaic Police Department had been working in concert with the DEA since July 1998 investigating street-level drug dealing in Passaic. The investigation ended in January 1999. Arrests were not made until the completion of the investigation so as not to jeopardize the undercover investigation.
On September 29, 1998, Clavijo and Paranto were working in one car, and Fenton and Devine were in another car. Both teams were working undercover, and Devine was fitted with a non-recording body microphone. At approximately 8:30 p.m., Devine and Fenton drove to the area of Oak Street and Myrtle Avenue, specifically to 75 Myrtle Avenue. Clavijo and Paranto also drove to that vicinity, but not the immediate area. According to Clavijo, the area of 75 Myrtle Avenue was "a known high intensity drug-trafficking area" within Passaic. It was also close to a school that was used for school purposes so as to implicate N.J.S.A. 2C:35-7, and the Passaic Municipal Park, thereby implicating N.J.S.A. 2C:35-7.1.
Upon reaching the targeted area, Devine exited the vehicle and crossed the street to reach 75 Myrtle Avenue, located in the middle of the block. Fenton remained in the car, parked at the corner of Oak Street and Myrtle Avenue, where he was able to watch Devine. According to Devine, as she walked to 75 Myrtle Avenue, she was approached by a heavy-set black male with a beard, who was later identified as White. He was wearing a white baseball cap, white long-sleeve shirt, and green pants. White asked Devine what and how much she wanted. She said "forty," referring to $40 worth of crack cocaine. White then went into the doorway of 75 Myrtle Avenue and moments later came out and gave Devine a piece of crack cocaine. In return, she gave $20 to White.
White then said he would be right back. He turned and went to another black male, described by Devine as tall and thin, who was wearing a horizontal multi-colored stripped shirt. Although not in her report, she stated this individual was also wearing a black zippered jacket, which was open. Passaic Police later told Devine the other individual was named Antrell Murray. She watched defendant reach into his jacket pocket, retrieve an object, and place the object into White's right hand. White then turned from defendant, came back to Devine, and gave her the object that had been placed in his right hand. In turn, she gave White an additional $20. The object was later determined to be crack cocaine. She said White entered into a white Pontiac Grand AM and left the area.
*224 Devine proceeded to walk toward her undercover vehicle. As she walked, she provided a description of White as being involved in the transaction. Neither Clavijo nor Paranto had seen the transaction. However, Fenton was also able to identify the first male as a heavy-set black male driving a white Pontiac. He was unable to provide a description of the second male. Clavijo and Paranto then drove to Myrtle Avenue and observed a male fitting the description get into a white car which was parked on the corner of Oak Street and Myrtle Avenue. Paranto immediately recognized that person to be White, whom he had known "for many years."
Clavijo and Paranto drove around the corner and met Devine and Fenton at a pre-arranged location. Devine gave Clavijo the rock-like substance, and provided a description of both individuals, including the second individual who she described as a black male wearing a multi-colored shirt. Devine then entered the backseat of the undercover vehicle, and she, Clavijo, and Paranto proceeded to the area of 75 Myrtle Avenue to attempt to locate and identify the second individual.
As they approached 75 Myrtle Avenue, Devine observed defendant at the same location where the transaction had occurred. Defendant was wearing a multi-colored shirt. Devine pointed to him, identifying him as the person who gave White the crack cocaine. Paranto and Clavijo exited the car to conduct a street interview and identification check with defendant. Devine remained in the car. According to Devine, the detectives "faced" defendant towards her and he was approximately fifteen feet away. When the detectives returned to the vehicle, Devine told them that the person they had just spoken to was the same person who had handed crack cocaine to White. She described the area as "well-lit by a street lamp."
Defendant was not arrested until March 8, 1999, when he voluntarily surrendered at the police station after he found out that the Passaic Police were looking for him. At trial, defendant acknowledged that he went to a barber shop located at 75 Myrtle Avenue to get a hair cut on September 29, 1998, and was talking to his cousin Robin Banks, in front of her home at 73 Myrtle Avenue, when Clavijo and Paranto confronted him and asked him for his identification. Defendant denied participating in a drug transaction.
On this appeal, defendant raises the following arguments:
POINT I:
THE PROSECUTOR'S SUMMATION EXCEEDED THE BOUNDS OF PROPRIETY. (NOT RAISED BELOW)
POINT II:
THE TRIAL COURT ERRED BY FAILING TO ADEQUATELY INSTRUCT THE JURY REGARDING ACCOMPLICE LIABILITY AND THE NEED TO DETERMINE THE DEFENDANT'S CRIMINAL CULPABILITY WITH RESPECT TO THE VARIOUS DRUG-RELATED CHARGES. (NOT RAISED BELOW)
POINT III:
THE DEFENDANT WAS DENIED HIS RIGHT TO A FAIR TRIAL AS A RESULT OF THE TRIAL COURT'S FAILURE TO SPECIFICALLY INSTRUCT THE JURY REGARDING CROSS-RACIAL IDENTIFICATION. (NOT RAISED BELOW)
POINT IV:
THE DEFENDANT IS ENTITLED TO A REMAND FOR A DETERMINATION AS TO THE REASONS FOR THE STATE'S DECISION IN FAILING OR REFUSING TO WAIVE SOME OR ALL OF THE PAROLE DISQUALIFIER WITH RESPECT TO COUNT III PURSUANT TO N.J.S.A. 2C:35-7. (NOT RAISED BELOW)
POINT V:
THE SENTENCE IMPOSED WAS MANIFESTLY EXCESSIVE.
*225 For the first time on appeal, defendant contends that comments made by the Assistant Prosecutor during summation that Devine had no motive to lie were improper, necessitating reversal. We disagree. "To justify reversal, the prosecutor's conduct must have been `clearly and unmistakably improper,' and must have substantially prejudiced defendant's fundamental right to have a jury fairly evaluate the merits of his defense." State v. Timmendequas, 161 N.J. 515, 575, 737 A.2d 55 (1999) (citations omitted.) "Generally, if no objection was made to the improper remarks, the remarks will not be deemed prejudicial." Id. at 576, 737 A.2d 55. The failure to make a timely objection not only indicates the defense did not believe the remarks were prejudicial at the time they were made, but also deprives the judge of the opportunity to take the appropriate curative action. Ibid. In addition, in reviewing a prosecutor's summation, we must consider the context in which the challenged portions were made, including determining whether the remarks were a measured response to defendant's summation made in an attempt to "right the scale." State v. Engel, 249 N.J.Super. 336, 379, 592 A.2d 572 (App.Div.), certif. den., 130 N.J. 393, 614 A.2d 616 (1991). Here, on his summation, defense counsel specifically challenged Devine's credibility, as follows:
Barbara Devine, wherever you are, you are a liar. You came to this court and you lied to this jury, whatever your motive is.

* * *
I can't stand here before you and try to present a motive as to why she [Devine] said what she said this morning.

* * *
If she is trying to score brownie points with her superiors, don't let her con you.

* * *
That's an absolute lie, a falsehood. Whatever her motive is, that never happened.
When viewed in that context, we conclude that the prosecutor's statement to the jury that Devine had no motive to lie was a carefully measured and appropriate response to defendant's attack on Devine's credibility by referring to her as a liar. Under those circumstances, the prosecutor's summation was not objectionable.
We next consider defendant's contention that the trial judge erred by failing to provide the jury with a cross-racial identification instruction. Defendant argues that because Devine's cross-racial identification of defendant was a critical issue, the trial judge's failure to provide such an instruction denied defendant his right to a fair trial. We disagree.
[6] Pursuant to R. 1:8-7(b), immediately prior to summations the judge conducted a charge conference and expressed his intention to give the jury the standard charge on identification. He specifically asked the attorneys if they had any other additional charges to request. Although defense counsel requested an additional charge on "material omissions," he did not ask for a special instruction regarding cross-racial identification. Moreover, defense counsel failed to object to the trial court's identification instruction which did not contain any reference to cross-racial identification. Subject to R. 2:10-2, the failure to object to a jury charge constitutes a waiver, R. 1:7-2. In addition, the absence of an objection suggests that trial counsel perceived no error or prejudice, and, in any event, prevents the trial judge from remedying the perceived error. State v. Mays, 321 N.J.Super. 619, 630, 729 A.2d 1074 (App.Div.), certif. den., 162 N.J . 132, 741 A.2d 99 (1999). Accordingly, we may reverse only if we conclude that the failure to give a cross-racial identification instruction was plain error. Under R. 2:10-2, the plain error rule, we reverse *226 only if we conclude that the error was clearly capable of producing an unjust result. State v. Macon, 57 N.J. 325, 335-36, 273 A.2d 1 (1971).
To be sure, our Supreme Court has held that the trial court's failure to give a requested instruction regarding cross-racial identification may constitute reversible error. State v. Cromedy, 158 N.J. 112, 115, 727 A.2d 457 (1999). In Cromedy, the Court held that such instructions should be given when identification is a critical issue in a case, and an eyewitness's cross-racial identification is not corroborated by other evidence giving it independent reliability. Id. at 132, 727 A.2d 457. In those circumstances, the jury should be given a cautionary instruction that it should pay close attention to the possible influence of race on the accuracy of the identification. Id. at 133, 727 A.2d 457.
Here, we conclude that the trial judge did not commit reversible error in failing to sua sponte include a charge on cross-racial identification. Devine's initial encounter with defendant was from a short distance. Unlike in Cromedy, she was not the victim of a violent crime, which made her nervous or upset. On the contrary, she was a trained investigator who testified that while she observed White and defendant have a conversation, she looked at their faces "[t]o remember characteristics... [f]acial features," presumably in order to be able to subsequently identify them. In addition, she testified the area was well-lit, and she conclusively identified defendant twice within minutes after her initial encounter with him. In Cromedy, on the other hand, the identification made by the civilian victim did not occur until almost eight months after the crime had been committed, when the victim saw an African-American male across the street from her whom she thought was her attacker. Under the circumstances here presented, we conclude the judge did not err in failing to sua sponte provide a cross-racial identification charge.
We next consider defendant's contention he is entitled to a remand to require the State to articulate its reasons for refusing to waive some or all of the mandatory period of parole ineligibility. In order to facilitate judicial oversight and protect against arbitrary and capricious prosecutorial decisions, a prosecutor must state on the record the reasons for the decision to waive or the refusal to waive all or a portion the mandatory period of parole eligibility set forth in N.J.S.A. 2C:35-7. State v. Vasquez, 129 N.J. 189, 196, 609 A.2d 29 (1992); State v. Perez, 304 N.J.Super. 609, 615, 701 A.2d 750 (App.Div.1997); State v. Powell, 294 N.J.Super. 557, 568, 683 A.2d 1175 (App.Div.1996). Here, the prosecutor did not provide any reasons for refusing to waive the three-year period of ineligibility prescribed by N.J.S.A. 2C:35-7. Accordingly, we are unable to review that refusal and a remand is necessary in order to require the prosecutor to set forth the reasons for the decision to waive or not to waive the period of parole ineligibility.
Finally, we note that the sentence imposed on count three is not clear. Unlike N.J.S.A. 2C:35-7, there is no statutory mandatory period of parole ineligibility for a conviction under N.J.S.A. 2C:35-7.1. After sentencing defendant to four years of imprisonment, with three years to be served without parole on count three, the judge also sentenced defendant on count four, stating as follows:
[t]he sentence of this court will be that you are placed in the custody of the Commissioner of the Department Corrections for a period of seven years. Count four to run concurrent to count three.
So, the sentence is seven with three before parole. However, count four is a second-degree crime, and there is a $2,000 DEDR, $50 lab, $50 VCCB, $75 Safe Neighbor Services, and a two-year revocation of driving privileges.
It is not clear from the transcript whether the judge was referring to an aggregate sentence of seven years with *227 three years to be served without parole, or whether he actually imposed a three-year period of parole ineligibility on count four, as well as on count three. On the other hand, the judgment of conviction reflects that the sentence imposed on count four was seven years of imprisonment, with three years of parole ineligibility. Ordinarily, we consider the sentencing transcript, rather than the judgment of conviction, to be the true source of the sentence. State v. Walker, 322 N.J.Super. 535, 556, 731 A.2d 545 (App.Div.), certif. den., 162 N.J. 487, 744 A.2d 1209 (1999); State v. Pohlabel, 40 N.J.Super. 416, 423, 123 A.2d 391 (App.Div.1956). Here, however, the sentencing transcript is unclear as to whether the judge intended to impose a three-year period of parole ineligibility on count four, as well as count three. Accordingly, on remand, the judge should also clarify his intent regarding the sentence imposed on count four. We note, however, the judge did not specifically conclude that he was clearly convinced that the aggravating factors substantially outweighed the mitigating factors. Obviously, that finding is a necessary prerequisite to the imposition of a discretionary period of parole ineligibility. N.J.S.A. 2C:43-6(b). In addition, we observe that ordinarily, a sentencing judge should not impose a period of parole ineligibility in conjunction with a presumptive sentence. State v. Kruse, 105 N.J. 354, 362, 521 A.2d 836 (1987).
We have carefully considered the record, the briefs filed, and the applicable law and conclude that all other issues of law raised by defendant on this appeal are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2). Although we affirm defendant's convictions, we remand for resentencing on counts three and four. We do not retain jurisdiction.