# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-0245-14T4
                      A-4603-15T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent.

v.

SIDDHARTH GAUR,

     Defendant-Appellant.

_____

Argued October 19, 2017 – Remanded November 6, 2017
Reargued telephonically May 18, 2020 – Decided July 16, 2020

Before Judges Rothstadt, Moynihan and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 10-06-0629.

Edward J. Dimon argued the cause for appellant (Carluccio Leone Dimon Doyle & Sacks, LLC, attorneys; Edward J. Dimon, of counsel; Marguerite Kneisser, on the briefs).

Ali Y. Ozbek, Assistant Prosecutor, argued the cause for respondent (Camelia M. Valdes, Passaic County Prosecutor, attorney; Kirah Michelle Addes, Assistant Prosecutor, of counsel and on the briefs).

PER CURIAM

In these consolidated appeals, defendant Siddharth Gaur appeals from his conviction, after trial by jury, for third-degree attempted endangering the welfare of a child, N.J.S.A. 2C:5-1 and N.J.S.A 2C:24-4(a) (count two); fourth-degree lewdness, N.J.S.A. 2C:14-4(b), as a lesser-included offense of second-degree attempted sexual assault, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:14-2(b) (count three); and second-degree attempted sexual assault, N.J.S.A. 2C:14-2(b) and N.J.S.A. 2C:5-1 (count four), [1] stemming from his communications in a chat room with a Passaic County Sheriff's Office (PCSO) detective posing as a twelve-year-old girl under the screen name "lalilbrat12." After defendant filed the notice of appeal from that conviction, the State moved to strike three expert reports and concomitant portions of defendant's appellate brief addressing alleged alteration of the State's audio recordings of conversations between defendant and a second PCSO detective arranging the meeting between defendant and lalilbrat12. We agreed with the State that the reports were not part of the trial record, and entered an order granting

> the State's motion to strike . . . the three expert reports
> [defendant] procured after the trial. However, our

---

[1] Defendant was found not guilty of second-degree attempted luring or enticing a child, N.J.S.A. 2C:13-6 (count one). The trial judge merged counts two and three into count four at sentencing.

disposition [was] without prejudice to [defendant] filing a motion in the trial court to seek relief based upon those expert reports, including but not limited to granting [defendant's] counsel or his experts access to the original audiotape recordings in the State's possession. The trial [judge had] jurisdiction to consider such a motion despite the pendency of this appeal.

Defendant filed a motion for access to the original audio recordings. The motion judge—who was not the trial judge—denied defendant's motion in a June 22, 2016 order that provided:

> The [motion judge] views this request as being beyond the legal competence of this [c]ourt to consider. . . . [D]efendant's argument in his appellate brief, that the State allegedly engaged in a Brady[2] violation by refusing requests for access to the original audio requests and his contention, based on the opinion of defense expert . . . that the State tampered with the tape recording of certain conversations, are issues for the Appellate Division's consideration on appeal as to the trial record. There has been no limited remand by the Appellate Division for the purpose of having the trial [judge] consider whether or not . . . defendant, post-jury verdict, should be allowed to have access to and to evaluate the recording in question to see whether or not they contain exculpatory evidence, as . . . defendant suggests. The legal basis for such was not articulated to this [c]ourt.

---

[2] Brady v. Maryland, 373 U.S. 83 (1963).

Defendant filed a notice of appeal from that order; we consolidated that appeal with defendant's first appeal.

On appeal, defendant argues in various briefs:

[POINT] I

THE FAILURE OF THE STATE TO DISCLOSE THE AUDIO RECORDING AT TRIAL AS WELL AS DEFENDANT'S ATTORNEY'S FAILURE TO OBTAIN AN ANALYSIS OF SAME PRIOR TO TRIAL WAS A CLEAR VIOLATION OF DEFENDANT'S CONSTITUTIONAL RIGHTS.

    a.    The Audio Recording [O]f [Defendant's] Conversations [W]ith State Agents Contained Critical [A]nd Exculpatory Evidence [W]hich [W]as Required [T]o [B]e Disclosed [B]y [T]he State [A]t Trial. The Failure [O]f [T]he State [T]o [D]o [S]o [W]as [A] Clear Violation [O]f Defendant's Due Process Rights, Mandating Reversal.

    b.    The Failure [O]f Defendant's Trial Attorney [T]o Obtain [A]n Authentication [A]nd Transcription [O]f [T]he Audio Recording Amounted [T]o [P]er [S]e Ineffective Assistance [O]f Counsel.

[POINT] II

THE TRIAL [JUDGE] ERRED IN DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL BECAUSE THE STATE FAILED TO PROVE THE REQUISITE ELEMENTS OF THE OFFENSES BEYOND A REASONABLE DOUBT.

4

[POINT] III

THE PROSECUTOR'S COMMENTS AND CONDUCT DURING THE TRIAL, INCLUDING THE SUPPRESSION BY THE PROSECUTOR OF MATERIAL EVIDENCE FAVORABLE TO DEFENDANT, DEPRIVED DEFENDANT OF HIS RIGHT TO A FAIR TRIAL AND VIOLATED DEFENDANT'S DUE PROCESS RIGHTS.

[POINT] IV

DEFENDANT'S TRIAL ATTORNEY'S REPRESENTATION WAS CONSTITUTIONALLY DEFICIENT.

[POINT] V

THE JURY INSTRUCTIONS DID NOT PROPERLY INSTRUCT THE JURY ON ESSENTIAL ELEMENTS OF THE CHARGES AGAINST DEFENDANT.

[POINT] VI

THE CONDUCT OF STATE AGENTS CAUSED THE COMMISSION OF THE CRIME HERE SUCH THAT DEFENDANT WAS ENTRAPPED.

[POINT VII]

THE TRIAL [JUDGE] ERRED IN ITS FINDING THAT IT LACKED JURISDICTION TO HEAR DEFENDANT'S MOTION.

[POINT VIII]

A-0245-14T4

THE TRIAL [JUDGE] ERRED IN DENYING DEFENDANT'S MOTION AS DEFENDANT DEMONSTRATED A FACTUAL BASIS THAT THE AUDIO RECORDINGS WERE TAMPERED WITH AND FALSIFIED SUCH THAT FURTHER ANALYSIS OF THE ORIGINALS IS NECESSARY.

[POINT IX]

THE FAILURE OF DEFENDANT'S TRIAL ATTORNEY TO OBTAIN AN AUTHENTICATION OF THE AUDIO RECORDING AMOUNTED TO PER SE INEFFECTIVE ASSISTANCE OF COUNSEL.[3]

Unpersuaded by these arguments, we affirm.

I.

Turning first to the appeal of the June 2016 order, defendant sought access to the original recordings of his conversations with the second PCSO detective— a female who was utilized because the detective who conducted the chat room conversations with defendant was a male—after submitting three expert reports in support of his claim that the recordings were altered. The State did not seek to introduce the recordings at trial, conceding they were inaudible; the record does not contain the recordings. Defendant's trial counsel told defendant's appellate counsel he was no longer in possession of the

---

[3] For convenience and clarity, we have renumbered the point headings in defendant's A-4603-15 brief as Points VII, VIII and IX.

recordings the State supplied in discovery. The State would not turn over the original recordings to defendant.

Defendant claims the State altered the recordings and did not produce the original audible recordings, thus preventing defendant from demonstrating to the jury his reasonable belief the person he chatted with online and who he expected to meet was an adult woman because she had an adult voice. He also avers he asked the female during the conversation if she was an adult. He contends the female PCSO detective offered perjured trial testimony when she denied defendant asked that question.

Defendant argues the motion judge erred by concluding he lacked "competence" to hear defendant's motion. We previously recognized the motion judge erred by ignoring our explicit remand for that purpose. On November 6, 2017, we vacated the motion judge's order and, retaining jurisdiction, "remand[ed] the matter back to the Law Division for consideration of defendant's motion in accordance with our original order." State v. Gaur, No. A-0245-14 (App Div. Nov. 6, 2017) (slip op. at 4).

On December 19, 2017, the motion judge ordered the Passaic County Prosecutor's Office to provide defendant with "cloned duplicates of the

7

original files of certain audio recordings[.]" Defendant has not appealed from that order.

Furthermore, according to defendant's second supplemental brief on the second appeal, "[a]fter much back and forth between counsel for [d]efendant and the Prosecutor's [o]ffice" defendant received "two . . . additional CD[]s purporting to be the original[.]" Defendant claims in the second supplemental brief, "the copies provided were not . . . the originals which were ordered to be disclosed." Both parties filed supplemental briefs and motions. The State sought to strike material outside the trial record from defendant's brief and appendix. Defendant sought to stay the appeal to allow him to file a motion to enforce litigant's rights extended by the motion judge's December 19, 2017 order and moved to supplement the appellate record.

On June 29, 2018, we entered orders granting defendant's request for a stay and leave to file the motion to enforce litigant's rights with the motion judge. We denied defendant's motion to supplement the record and the State's motion to strike, both without prejudice to allow refiling after the remand.

The motion judge considered defendant's motion to enforce litigant's rights and entered an order on August 29, 2018, denying the motion, but ordering defendant's appellate counsel and the State to "agree on a time and

date for [defendant's] counsel to have access to the original CD [r]ecording in question so that [his] expert may make any copies" and the State to provide defendant's "counsel with a report from the [PCSO] regarding the make and model of the device used to make the original CD recording, if that information [was] available." Defendant did not appeal from that order.

In his supplemental brief, defendant states his appellate counsel contacted his "expert who agreed to communicate with the [PCSO] regarding the procedure they employed in creating the recording. Thereafter, [d]efendant filed an updated expert report."

On February 14, 2019, we denied defendant's motion to supplement the record with the expert report and granted

> the State's motion to strike the portions of [defendant's] brief concerning, and his appendix containing the expert reports struck from the record pursuant to this court's February 2, 2016 order, additional expert reports, dated March 5, 2018, and emails that are not part of the trial record. However, our disposition [was] without prejudice to [defendant] filing a motion in the trial court to seek relief based upon his claim the subject tapes were doctored. Depending on how the trial [judge] rule[d on the motion if it was] filed, either party [could have sought] appellate review of the [judge's] ruling in a new notice of appeal, which [would have been] consolidated with the present appeal.

9

> [Defendant was ordered to] file redacted versions of his brief and appendix omitting the challenged material within [thirty] days of the date of [the] order.

There is no evidence of a subsequent motion by defendant to the motion judge.

The record manifests defendant's claim of error by the motion judge was remedied by the motion judge's last order that resulted in access to the original recording and the method of recording, if not the motion judge's prior order requiring the State to provide cloned duplicates of the original recordings. In that defendant did not appeal from those orders, his initial appeal, based on the motion judge's failure to address his motion for access to the original recoding, is moot. See Redd v. Bowman, 223 N.J. 87, 104 (2015) ("An issue is 'moot when our decision sought in a matter, when rendered, can have no practical effect on the existing controversy.'" (quoting Deutsche Bank Nat'l Tr. Co. v. Mitchell, 422 N.J Super. 214, 221-22 (App. Div. 2011))).

## II.

We also reject defendant's argument that the State committed a Brady violation by failing to turn over the original recordings which he contends are exculpatory evidence. "In order to establish a Brady violation the defense must demonstrate that (1) the prosecution failed to disclose the evidence; (2)

10

the evidence was of a favorable character for the defense; and (3) the evidence was material." State v. Carter, 85 N.J. 300, 311 (1981).

Because the State provided the recording to defendant's trial counsel, and it was later made available to defendant and his expert, defendant has failed to meet the first prong of the test. So too, defendant has failed to meet the second prong. All of the alleged proofs of alteration lie outside the trial record, and all of those proofs have been stricken from the appellate record. As such, nothing in the record demonstrates the State altered the recordings. Nor did defendant establish the State suppressed evidence of which it knew, but was unknown to the defense. See id. at 313. And, inasmuch as the recording of record is inaudible, defendant did not establish, save for his unsupported arguments, that the original recording contained material, exculpatory evidence.

In State v. Morton, 155 N.J. 383 (1998), our Supreme Court observed "Brady's focus . . . is on the nondisclosure of exculpatory evidence, not on challenges to the evidence's authenticity." Id. at 413. The Court continued:

> Defendant's argument, that the original tapes, if altered, would constitute exculpatory evidence under Brady, is too attenuated. His challenge is directed at the authenticity, not the disclosure, of evidence. As such, defendant must provide more than mere unfounded allegations of tampering to compel

11

> the prosecutor to turn over the original tapes for testing.
>
> [Id. at 413-14.]

On the record before us, defendant, like the defendant in Morton, failed to establish a Brady violation.

## III.

Defendant argues his trial counsel rendered ineffective assistance by failing "to seek and obtain an analysis of the recording as well as an opinion regarding its authenticity." He claims he told his trial counsel that the female PCSO detective "sounded like a much older person." He also urges us to conclude trial counsel was ineffective for failing to present "the contents of the audio" to impeach the female PCSO detective's testimony that she was acting like a twelve year-old during the recorded conversation.

Again, there is nothing in the record to support defendant's contention that the recording was altered to render it inaudible. It is undisputed the copy of the recording provided to trial counsel was inaudible. Furthermore, trial counsel's reason for accepting that the recording was inaudible and that the State would not seek to admit it at trial, is absent from the record.

12

"Our courts have expressed a general policy against entertaining ineffective-assistance of counsel [(IAC)] claims on direct appeal because such claims involve allegations and evidence that lie outside the trial record." State v. Castagna, 187 N.J. 293, 313 (2006) (quoting State v. Preciose, 129 N.J. 451, 460 (1992)). Typically, a "defendant must develop a record at a hearing at which counsel can explain the reasons for his conduct and inaction and at which the trial judge can rule upon the claims including the issue of prejudice." State v. Sparano, 249 N.J. Super. 411, 419 (App. Div. 1991); see also State v. McDonald, 211 N.J. 4, 30 (2012) (determining that a post-conviction relief [(PCR)] "proceeding would be the appropriate forum to evaluate the strategy of defendant's trial counsel . . . and other issues requiring information that is not in the record before the Court").

We follow the general policy against entertaining IAC claims here. The under-developed record on appeal does not allow us to properly evaluate defendant's claims related to the recording. Those claims are better suited for a PCR proceeding, especially if defendant eventually establishes that the recording was altered to conceal material, exculpatory evidence. So too, defendant's bald claim that trial counsel failed "to discuss the initial plea offer with [him] as well as the full consequences of a guilty verdict, including

deportation," is based on matters outside the trial record; that too, is an argument better left to a PCR proceeding.

Defendant also claims his trial counsel was constitutionally deficient because of "his deferral to the State's misrepresentations regarding the accessibility of the avatar." The male PCSO detective utilized a cartoon avatar in portraying "lalilbrat12" during his online chats with defendant. During deliberations, the jury requested to see the video recording depicting the avatar. The trial judge, relying on the State's representation that it "might not be possible" for the jury to see the avatar on the recording, told the jury "there [was] no photo of an [a]vatar on the video." Apparently, that information was mistaken. Defendant claims trial counsel's failure to correct the mistake deprived him of the jury's consideration of evidence that was material to his contention that he believed lalilbrat12 was an adult because the avatar depicted an adult female.

The record is bereft of trial counsel's reason for acquiescing to the State's mistaken advice to the trial judge regarding the avatar. We cannot ascertain if counsel deduced the cartoon avatar would, contrary to defendant's present contention, be more associated with a twelve year-old than an adult.

14

Additionally, to establish that his counsel was ineffective, defendant must satisfy the test formulated in Strickland v. Washington, 466 U.S. 668, 687 (1984), and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987). He must first show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Fritz, 105 N.J. at 52 (quoting Strickland, 466 U.S. at 687). He must also prove that he suffered prejudice due to counsel's deficient performance. Strickland, 466 U.S. at 691-92. Defendant must show by a "reasonable probability" that the deficient performance affected the outcome. Fritz, 105 N.J. at 58. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the matter. Strickland, 466 U.S. at 694.

As we will hereafter discuss in our analysis of the motion for judgment of acquittal in Section IV, there was an abundance of evidence presented by the State to establish defendant reasonably believed he was interacting with a twelve year-old. There is no evidence the avatar—a cartoon depiction—would have countermanded the explicit representations to defendant that lalilbrat12 was age twelve, or that the detectives led defendant to believe the avatar represented what lalilbrat12 looked like. Indeed, lalilbrat12 described her

physical appearance to defendant as four feet, nine inches tall and "like [eighty-five] pounds," to which defendant replied, "[w]ell you will grow it's still your age[.]" Thus, accepting that counsel committed an egregious error by failing to correct the trial judge's advice to the jury regarding the avatar, thus satisfying the first Strickland-Fritz prong, we do not discern there was a reasonable probability that failure affected the jury's verdict.

IV.

For the same reasons we reject defendant's claim, embedded in his argument that the trial judge erroneously denied his motion for judgment of acquittal, that the trial judge erred by informing the jury the avatar was not available to it. While we do not countenance the State's misrepresentation to the trial judge, or the judge's acceptance of that misrepresentation after ostensibly seeing the avatar depicted during the trial, the error was not "clearly capable of producing an unjust result[.]" R. 2:10-2. That is, it was not "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." See State v. Macon, 57 N.J. 325, 336 (1971)).

16

Defendant asserts his motion for judgment of acquittal under Rule 3:18-1 should have been granted because without evidence of masturbation or sexual content during the online chat, "[t]here is simply insufficient evidence, beyond a reasonable doubt, to prove [defendant] was touching [himself] for the purpose of sexual arousal or gratification." He further contends much of the evidence contradicted the State's proofs that lalilbrat12 was under thirteen years-old.

The trial judge did not comply with Rule 1:7-4(a) by stating the findings of fact and conclusions of law that buttressed her denial of defendant's motion because she wanted "to bring the jury out." No matter, we review the denial of a Rule 3:18-1 motion de novo, and conduct an independent assessment of the evidence, applying the same standard as the trial judge, see State v. Williams, 218 N.J. 576, 593-94 (2014).

Defendant's argument ignores that standard:

> [T]he broad test for determination of such an application is whether the evidence at that point is sufficient to warrant a conviction of the charge involved. More specifically, the question the trial judge must determine is whether, viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn

therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt.

[State v. Reyes, 50 N.J. 454, 458-59 (1967) (citation omitted).]

We are "not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the State." State v. Papasavvas, 170 N.J. 462, 521 (2002) (quoting State v. Kluber, 130 N.J. Super. 336, 342 (App. Div. 1974)). "If the evidence satisfies that standard, the motion must be denied." State v. Spivey, 179 N.J. 229, 236 (2004). Notwithstanding defendant's countering proofs, the State's proofs, and the inferences drawn therefrom, met the Reyes standard. See Reyes, 50 N.J. at 458-59.

Both of defendant's arguments center on some of the elements of second-degree attempted sexual assault, N.J.S.A. 2C:14-2(b), [4] which proscribes committing "an act of sexual contact with a victim who is less than [thirteen] years old [when] the actor is at least four years older than the victim." N.J.S.A. 2C:14-1(d) defines sexual contact as:

---

[4] Defendant's merits-brief arguments do not address the elements of the other crimes of which he was convicted: third-degree attempted endangering the welfare of a child, N.J.S.A. 2C:5-1 and N.J.S.A 2C:24-4(a) (count two) and the lesser-included fourth-degree crime of lewdness, N.J.S.A. 2C:14-4(b) (count three), both of which were merged into the second-degree attempted sexual assault at sentencing.

> [A]n intentional touching by the victim or actor, either directly or through clothing, of the victim's or actor's intimate parts for the purpose of degrading or humiliating the victim or sexually arousing or sexually gratifying the actor. Sexual contact of the actor with himself must be in view of the victim whom the actor knows to be present.

The State need not prove defendant masturbated in lalilbrat12's view in order to establish the requisite criminal elements. "Sufficient victimization occurs when, in view of an underage child . . . an actor commits an act of sexual contact by touching himself or herself[.]" State v. Zeidell, 154 N.J. 417, 435 (1998).

During the male PCSO detective's testimony, he showed video recorded from defendant's webcam, after he, posing as lalilbrat12, accepted defendant's invitation to view same on December 9, 2009, the date of the sexual assault charged in count four of the indictment. On direct examination, the detective described to the jury what was shown on the screen, the same images that he saw broadcast from defendant's webcam:

> [ASSISTANT PROSECUTOR:] Okay. Now, [d]etective, I just paused the video where it says last image received at [December 9, 2009] at 10:55:16 a.m. What was just displayed on the screen?
>
> [THE DETECTIVE:] It was [defendant] wearing the same thing, a white [t]-shirt with the checkered shorts

19

pacing back and forth.  And in addition to that you could tell that he ha[d] an erection.

[ASSISTANT PROSECUTOR:]  Did you notice if . . . defendant was touching it at any point?

[THE DETECTIVE:]  Yes, he was touching it.

The detective also read the online conversation shown to the jury—as depicted on the video—between defendant and lalilbrat12 about the defendant's images, which we quote in part:

[ASSISTANT PROSECUTOR:] Okay.  Now, picking up where [l]alilbrat12 says at 10:55:19 a.m., "[w]hat are you touching?," question mark. . . .  [D]efendant says in response?

[THE DETECTIVE:]  "I'm back, N-W" Emotion icon with the tongue sticking out.

[ASSISTANT PROSECUTOR:]  What else does he say?

[THE DETECTIVE:]  "You saw it"

[ASSISTANT PROSECUTOR:]  And, then [l]alilbrat12 says, "[y]eah I saw you touching your thingy"

[THE DETECTIVE:]  "Heyhey"

[ASSISTANT PROSECUTOR:]  And she sends back a smiley face.

[THE DETECTIVE:] "It's itching" [t]hen he sends another emotion icon that's, ". ."&," two dots with the quotes and the ampersand sign.

[ASSISTANT PROSECUTOR:] And [l]alilbrat12 says, "ew wash it"

[THE DETECTIVE:] "I mean M-M-T wearing undies so it's kind of up t[h]at's why"

[ASSISTANT PROSECUTOR:] "Yeah it looked up"

[THE DETECTIVE:] "Oh"

[ASSISTANT PROSECUTOR:] Smiley face.

[THE DETECTIVE:] "You gonna become bad in my company"

[ASSISTANT PROSECUTOR:] "You are lol"

[THE DETECTIVE:] "Yes"

[ASSISTANT PROSECUTOR:] Smiley face.

[THE DETECTIVE:] "I hope you forgotten first time incident"

[ASSISTANT PROSECUTOR:] "Why you hope?," question mark.

[THE DETECTIVE:] "[L]ol"

[ASSISTANT PROSECUTOR:] "[L]ol"

[THE DETECTIVE:] "Cause it's better"

[ASSISTANT PROSECUTOR:] "I guess"

21

A-0245-14T4

[THE DETECTIVE:] "You're getting naughty"

[ASSISTANT PROSECUTOR:] "[L]ol"

Still on direct examination, the detective also described images broadcast from the webcam recorded later during their online conversation:

> [ASSISTANT PROSECUTOR:] Now, [d]etective, I'm going to pause the video where it's a black image received at [December 9, 2009], 12:10:32 p.m. Can you please describe for the jury and for the record what was just displayed on the screen?
>
> [THE DETECTIVE:] It's [defendant] exposing his penis on web cam.
>
> [ASSISTANT PROSECUTOR:] Thank you. Was [defendant] doing anything with his penis at any point in time?
>
> [THE DETECTIVE:] Yeah, he has his hands over it.
>
> [ASSISTANT PROSECUTOR:] So he was touching his penis?
>
> [THE DETECTIVE:] That's correct.
>
> [ASSISTANT PROSECUTOR:] Okay. Now [d]etective . . . what was just displayed on the screen is what you saw -- is that what you saw that day posing as [l]alilbrat12?
>
> [THE DETECTIVE:] That's correct.

22

A-0245-14T4

During the concomitant online conversation, also depicted on the screen shown to the jury, defendant clearly indicated he knew he was showing his penis to lalilbrat12. Moreover, defendant acknowledged on cross-examination that the video shows him touching his penis "[o]nce or twice[.]"

The video evidence, the detective's testimony and defendant's own words, both during the chatroom discussions with lalilbrat12 and on cross-examination, prove the sexual contact element of sexual assault. Evidence that his penis was erect leads to the inference that he did so to sexually arouse or gratify himself.

There is also ample evidence to establish that the "victim" was less than thirteen years-old. Not only did lalilbrat12 explicitly tell defendant she was twelve on a number of occasions, a fact acknowledged by defendant during his cross-examination, a review of the content and context of the chatroom discussions—including lalilbrat12's school, activities and homelife—leads to the inference she was twelve. Particularly telling are the conversations elicited during defendant's cross-examination when he confirmed that he believed he was speaking with a twelve-year-old girl when he posed a math problem that incorporated her age.

23

Viewing this evidence under the <u>Reyes</u> lens, we determine the trial judge properly denied the <u>Rule</u> 3:18-1 motion.

Defendant also interjected another argument in the merits brief section addressing the motion for judgment of acquittal:  reversal is required because the judge allowed the assistant prosecutor and detective to "role play" when presenting the chatroom conversation between defendant and lalilbrat12, with the assistant prosecutor reading defendant's words and the detective reading lalilbrat12's words "in a <u>little girl's voice</u>," which "was extremely prejudicial and plainly erroneous[.]"  We determine the argument is without sufficient merit to warrant discussion.  <u>R.</u> 2:11-3(e)(2).  We note trial counsel did not so characterize the detective's reading when he objected only to the conversations being presented by two people instead of one.  Moreover, in allowing the presentation to be made by two people, the trial judge observed:  "I haven't denoted any added inflections by [the assistant prosecutor] in any way with respect to her reading of the one side of the IM message.  And the same with the [d]etective.  I think it's been rather flat."

V.

Defendant alleges three spheres of prosecutorial misconduct: comments by the assistant prosecutor during the State's opening, trial and the State's summation.

Defendant asserts that during her opening statement the assistant "[p]rosecutor placed undue and improper emphasis on the [g]rand [j]ury [i]ndictment," by telling the jury: "As a result of what had transpired between [l]alilbrat12 and . . . defendant the grand jurors in the State of New Jersey for the County of Passaic returned a four count indictment against . . . defendant." Defendant contends in his merits brief that that statement, advising the petit jury "they should draw a natural inference that [d]efendant was guilty because 'based on this specific evidence' another jury chose to indict," was improper.

Defendant, however, did not object to the assistant prosecutor's remark. As such, the remarks generally "will not be deemed prejudicial." State v. Timmendequas, 161 N.J. 515, 576 (1999). "The failure to make a timely objection not only indicates the defense did not believe the remarks were prejudicial at the time they were made, but also deprives the judge of the opportunity to take the appropriate curative action." State v. Murray, 338 N.J. Super. 80, 87-88 (App. Div. 2001).

Our review of the record reveals that the assistant prosecutor did not ask the jury to infer anything from the fact that defendant was indicted by a grand jury. We also note the trial judge twice instructed the jury that counsel's comments were not controlling. At the outset of the trial, the judge instructed the jury: "What is said in the opening statement is not evidence. The evidence will come from the witnesses who will testify and from whatever documents or tangible items that are received in evidence." In her closing instructions, the judge further explained: "Arguments, statements, remarks, openings and summations of counsel are not evidence and must not be treated as evidence." Moreover, after advising the jury that "defendant [stood] before [it] on an indictment returned by the grand jury charging him" with the delineated charges, the judge admonished the jury:

> The indictment is not evidence of . . . defendant's guilt on the charges. An indictment is a step in the procedure to bring the matter before the [c]ourt and jury for the jury's ultimate determination as to whether . . . defendant is guilty or not guilty of the charges stated in it.

The jury is presumed to have followed those instructions. See State v. Loftin, 146 N.J. 295, 390 (1996) ("That the jury will follow the instructions given is presumed.").

26

Under those circumstances, we do not perceive the assistant prosecutor's fleeting opening comment was "clearly and unmistakably improper" and was "so egregious that it deprived the defendant of a fair trial." State v. Wakefield, 190 N.J. 397, 438 (2007) (first quoting State v. Papasavvas, 163 N.J. 565, 625 (2000); then quoting State v. Smith, 167 N.J. 158, 181 (2001)).

Defendant also takes issue with the assistant prosecutor's frequent comments during the trial about "[w]hat a normal [twelve-]year[-]old girl would talk about . . . [and] act . . . without providing any evidence to support her contentions." And, he highlights those portions of the assistant prosecutor's summation in which she told the jury

> we know . . . [the 'victim'] ha[d] a screen name[,] . . . lalilbrat12, signifying that she[ was] a little girl and she[ was] [twelve].
>
> . . . .
>
> She talk[ed] like, I submit, . . . any [twelve] year[]old. In emoticons, short language. Yeah, he-he, LOL. Very laughy, very jovial, very juvenile.

Defendant avers the assistant "[p]rosecutor made unsupported credibility determinations and interfered with the jury's role in rendering a verdict." He argues there was no evidence that lalilbrat12 was twelve years-old, or as to how girls of that age "would think, feel, or act." The assistant prosecutor's

comments, he contends were conclusory statements on matters not in evidence, requiring reversal.

Again, defendant did not object to the State's summation. As we recognized in <u>Murray</u>, 338 N.J. Super. at 87-88:

> "To justify reversal, the prosecutor's conduct must have been 'clearly and unmistakably improper,' and must have substantially prejudiced defendant's fundamental right to have a jury fairly evaluate the merits of his defense." [<u>Timmendequas</u>, 161 N.J. at 575]. "Generally, if no objection was made to the improper remarks, the remarks will not be deemed prejudicial." <u>Id.</u> at 576. The failure to make a timely objection not only indicates the defense did not believe the remarks were prejudicial at the time they were made, but also deprives the judge of the opportunity to take the appropriate curative action. <u>Ibid.</u> In addition, in reviewing a prosecutor's summation, we must consider the context in which the challenged portions were made, including determining whether the remarks were a measured response to defendant's summation made in an attempt to "right the scale." <u>State v. Engel</u>, 249 N.J. Super. 336, 379 (App. Div. 1991).

"Prosecutors 'are afforded considerable leeway in making opening statements and summations,'" <u>State v. Echols</u>, 199 N.J. 344, 359-60 (2009) (quoting <u>State v. Williams</u>, 113 N.J. 393, 447 (1988)), and "are expected to make vigorous and forceful closing arguments to juries," <u>State v. Frost</u>, 158 N.J. 76, 82 (1999). Nonetheless, a prosecutor's "summation is limited to

commenting upon the evidence and the reasonable inferences to be drawn therefrom." State v. Swint, 328 N.J. Super. 236, 261 (App. Div. 2000).

"A prosecutor may not express a personal belief or opinion as to the truthfulness of his or her witness's testimony." State v. Staples, 263 N.J. Super. 602, 605 (App. Div. 1993). It is permissible, however, to "argue that a witness is credible, so long as the prosecutor does not personally vouch for the witness or refer to matters outside the record as support for the witness's credibility." State v. Walden, 370 N.J. Super. 549, 560 (App. Div. 2004).

We have already noted the evidence about lalilbrat12's age. Defendant's knowledge of same was one of the highly contested issues during the trial. Indeed, the State's summation responded to the defense summation in which it was claimed defendant

> believed almost from the very beginning that the language of the person who referred to themselves lalilbrat12 was the language of an adult and not a child.
>
> . . . .
>
> [T]here was nothing that he ever heard or saw that would tell him whether he was dealing with a male, a female, or what the age of that person might be.

The assistant prosecutor addressed that contention and properly confined her closing remarks to the evidence and the reasonable inferences that could be

29

drawn therefrom, see State v. Johnson, 287 N.J. Super. 247, 265 (App. Div. 1996), in proving a required element of all the indicted charges: lalilbrat12's age. We discern no error, much less a plain one "clearly capable of producing an unjust result[.]" R. 2:10-2. Under the harmless error standard, there must be "some degree of possibility that [the error] led to an unjust verdict. The possibility must be real, one sufficient to raise a reasonable doubt as to whether [it] led the jury to a verdict it otherwise might not have reached." State v. Bankston, 63 N.J. 263, 273 (1973). The State's summation, to which no objection was lodged, does not present any such possibility.

The same holds true for the assistant prosecutor's closing remark that "what we saw on video was [defendant] touching himself for sexual gratification or arousal," which defendant argues was not supported by the evidence. Defendant concedes the State was required to prove as an element of sexual assault that defendant touched himself for the purpose of sexual arousal or sexual gratification. Obviously, the video provided evidence of the touching. And, as we recognized, defendant's erection was evidence from which the jury could find the required element. The assistant prosecutor's comment was proper.

30

The assistant prosecutor's description of the condom found on defendant when he was arrested, however, was improper. She properly responded to trial counsel's closing remark:

> What does the [S]tate point to in an attempt to convince you that [defendant] was going to commit a sexual offense? Well, one of the things they pointed to was a condom that he had in his wallet. I ask you if you think it's unusual for a [twenty-nine]-year-old single male to walk around with a condom in his wallet. I submit to you that nowadays it's not unusual for a [twenty-nine]-year-old single woman to be walking around with a condom in her wallet or pocketbook. It's just something that's more common since the advent of AIDS and everything else, and there's more sexual freedom than we've had in the past. This is not an unusual thing. The fact that you happen to be carrying one around with you proves nothing.

In doing so, however, she told the jury:

> [The detectives] found a condom on him. Sure, that's not uncommon. You know, given this day and age, some people carry condoms, a condom in their wallet. You know, females even carry condoms. But I submit to you, ladies and gentlemen, how common is it to carry a strawberry[-]flavored condom with you? A strawberry[-]flavored condom. You know, it's a flavor, it's sweet, it's candy-like. Perhaps because kids like candy. [Twelve]-year-old girls like candy. Who knows?

There is no evidence in the record that the condom was strawberry-flavored.

No objection was interposed by defendant.  Under the now-familiar lens under which we view such remarks, we can infer that the description was of no moment in the context of the trial.  <u>State v. Ingram</u>, 196 N.J. 23, 42-43 (2008).  "Any error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result[.]"  <u>R.</u> 2:10-2.  Under the harmless error standard, there must be "some degree of possibility that [the error] led to an unjust verdict.  The possibility must be real, one sufficient to raise a reasonable doubt as to whether [it] led the jury to a verdict it otherwise might not have reached."  <u>Bankston</u>, 63 N.J. at 273.  The brief description, especially in light of the evidence of defendant's actions and intent, was harmless error.

Defendant also avers in his merits brief that the assistant prosecutor improperly attempted to interject "how <u>she</u> acted as a teenager" when cross-examining defendant.  When the assistant prosecutor responded to defendant's testimony about the likelihood of online interaction between a twenty-nine year-old adult and a pre-teen or teenager, the assistant prosecutor replied, "[w]ell, what if I told you that when I was [seventeen.]"  Her statement was interrupted by trial counsel's objection.  The trial judge agreed and, as defendant concedes in his merits brief, the assistant prosecutor "was not

permitted to continue[.]" The assistant prosecutor's incomplete thought had no impact on the trial.

VI.

Defendant argues that his "conviction must also be reversed because the jury was not instructed properly," claiming "the jury instructions provided no guidance to the jury on an essential element of the offense, namely, the definition of sexual arousal or gratification," without which, the jury "was merely left to imply a definition in this regard." We disagree.

Defendant did not object to the judge's instruction which largely mirrored the Model Jury Charges (Criminal), "Sexual Assault - Victim Less Than [Thirteen] Actor At Least [Four] Years Older Than Victim (N.J.S.A. 2C:14-2(b))" (rev. Mar. 10, 2008):

> The statute . . . in pertinent part states: [A]n actor is guilty of sexual assault if he commits an act of sexual contact with a victim who is less than [thirteen] years old and the actor is at least four years older than the victim.
>
> In order to convict defendant of this charge, the [S]tate must prove the following elements beyond a reasonable doubt:
>
> One. . . . [D]efendant purposely committed an act of sexual contact by touching himself and the touching was in view of lalilbrat12, who . . . defendant knew was present.

Two. . . . [D]efendant reasonably believed that lalilbrat12 was less than [thirteen] years old at the time of the sexual contact.

And three. At the time of the sexual contact, defendant was at least four years older than lalilbrat12.

Following the model charge, the judge instructed the jury: "Sexual contact means an intentional touching by . . . defendant, either directly or through clothing, of . . . defendant's intimate parts for the purpose of degrading or humiliating lalilbrat12 or sexually arousing or gratifying defendant."

There is a presumption that the failure to object reflected the defendant's evaluation that the charge was not erroneous and was unlikely to prejudice his case. Macon, 57 N.J. at 333-34. Accordingly, in the absence of a contemporaneous objection, any claim of error concerning a jury charge is reviewed under the plain error standard and will be disregarded "unless it is of such a nature as to have been clearly capable of producing an unjust result[.]" R. 2:10-2. In the context of jury instructions, plain error is a "legal impropriety . . . prejudicially affecting the substantial rights of the defendant and sufficiently grievous to . . . convince the court that of itself the error possessed a clear capacity to bring about an unjust result." State v. Hock, 54

34

N.J. 526, 538 (1969). Not any possibility of an unjust result will suffice as plain error, only "one sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." Macon, 57 N.J. at 336.

We discern no error, much less plain error, in the judge's charge which gave "a clear explanation of the applicable law to provide the jury with an adequate understanding of the relevant legal principles." State v. Hackett, 166 N.J. 66, 85 (2001). Model jury charges are frequently beneficial to trial courts in performing the imperative function of charging a jury. State v. Concepcion, 111 N.J. 373, 379 (1988). The model charge does not define "sexual arousal" or "sexual gratification." Those terms are left to their plain meaning.

There is no evidence the jury had difficulty understanding those meanings. The judge twice told the jurors that if, during deliberations, any juror had a question or felt the need for "further assistance or instructions," she or he should write the question or request for submission to the judge. The judge also gave the jury two copies of the instructions and told the jurors she was "available to assist [them] in understanding the instructions if [they] need[ed] further assistance." No juror request involved the definitions of the disputed terms. When the charges are "clear and accurate, . . . we generally

35

must assume that the jury followed such a charge." State v. Davis, 390 N.J. Super. 573, 598 (App. Div. 2007).

## VII.

Contrary to defendant's argument that, because there was "clear evidence that [defendant] was entrapped by the State," the trial judge committed plain error by failing to sua sponte instruct the jury on the defense of entrapment, the judge did instruct the jury consistent with the Model Jury Charges (Criminal), "Entrapment (N.J.S.A. 2C:2-12)" (approved Jan. 12, 1982).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION